JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Ronnie Quann, Devon Batista, William May, et al.

**(b)** County of Residence of First Listed Plaintiff **Philadelphia**

*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys

Cornerstone Legal Group
D. Wesley Cornish, Esquire
Attorney-At-Law
230 South Broad Street, 17th Floor
Philadelphia, PA 19102

Phone 888-313-1385

## DEFENDANTS

The Summit School Inc. t/d/b/a The Academy Schools, t/d/b/a The Summit Academy

County of Residence of First Listed Defendant **Butler**

*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | ☐ 871 IRS—Third Party 26 USC 7609 | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. § 1983, 20 U.S.C. § 1681

Brief description of cause:
Deprivation of Federal Civil Rights

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:

**JURY DEMAND:** ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
February 28, 2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _944 Anchor Street Philadelphia, PA 19124_

Address of Defendant: _839 Herman Road Herman, PA 16039_

Place of Accident, Incident or Transaction: _Herman, PA_

---

**RELATED CASE, IF ANY:**

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _02/28/2023_   ___Must sign here___   _310865_
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.     Federal Question Cases:**

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases
  *(Please specify):* _____

**B.     Diversity Jurisdiction Cases:**

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify):* _____
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases
  *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _D. Wesley Cornish_, counsel of record *or pro se plaintiff*, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: _02/28/2023_   ___Sign here if applicable___   _310865_
*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

| | | |
|---|---|---|
| Ronnie Vincent Quann, Devon Batista, William May, Sharief Clayton, Robert Borders, Kyle Mikell-Givens, and Saheed Bailey Plaintiffs,<br>vs.<br>The Summit School Inc, t/d/b/a The Academy Schools, t/d/b/a The Summit Academy, and John/Jane Does 1-100, Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | United States District Court<br>Eastern District of Pennsylvania<br><br>Civil Division – Civil Rights<br>CLASS ACTION – JURY DEMAND<br>Case No.: 23-cv-808 |

## CLASS ACTION COMPLAINT

Plaintiffs Ronnie Vincent Quann ("Quann"), Devon Batista ("Batista"), William May ("May"), Sharief Clayton ("Clayton"), Robert Borders ("Borders"), Kyle Mikell-Givens ("Mikell-Givens"), and Saheed Bailey, ("Bailey") individually and on behalf of all others similarly situated, allege as follows, against Defendant The Summit School Inc., and John/Jane Does 1-100, in their official and individual capacities (the "John/Jane Doe Defendants") (collectively "Summit Academy", the "School", and "Defendants"):

## INTRODUCTION

1. The School operates facilities where juveniles are held in custody in Pennsylvania.

2. The School, by contract and legislation in Pennsylvania, and all the states it operates, has been delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; and (b) to carry out legislatively mandated control and related services, and to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

3. The Academy Schools offers rehabilitation, education and support services for youth through a trauma-informed approach. Established in Western Pennsylvania and managed by leaders and innovators in the field of juvenile justice, The Academy Schools are both community-based and residential, serving both local and out-of-state students. Available at www.facebook.com/theacademyschools/about/

4.  Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Summit Academy failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law and as a result of the Defendant's misconduct, children in Summit Academy facilities have been reportedly sexually abused – often by Summit Academy staff.

5.  Thus, the School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

6.  The school was acting as an arm of the states and Commonwealth, where it operates, acts under the color of law for 42 U.S.C. § 1983 liability purposes.

7.  In Pennsylvania the Juvenile Court Judges Commission adopted the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system in Pennsylvania) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."

8.  The School also professes to employ a "Balanced and Restorative Justice (BARJ) compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."

9.  The School program includes room and board, clothing, behavior management individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." Available at https://theacademyschools.com/the-summit-academy/

10. The School offers services for court-adjudicated youth and non-delinquent youth. Available at https://theacademyschools.com/the-summit-academy/

11. Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiffs and those similarly situated under the Fourth, Eighth, and Fourteenth Amendments, and committed tortious

2

conduct under state law, by subjecting Plaintiffs and those similarly situated to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect them from harm and injuries at the hands of others.

12. Defendants violated Plaintiffs' state and federal Constitutional equal rights to educational opportunities.

13. The School caused the injuries and harms to Plaintiffs and those similarly situated by failing to properly train, supervise, and discipline the John/Jane Doe Defendants and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

14. Further, the School failed to protect Plaintiffs and those similarly situated from assaults and abuse by staff and fellow students at the School.

15. The School itself and via its staff members, individually and collectively, deprived the Plaintiffs and others similarly situated from their constitutionally guaranteed right to an education and equal educational opportunities.

16. The School has failed to properly protect Plaintiffs, and those similarly situated, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at the School.

17. Additionally, in the Commonwealth of Pennsylvania state court, more than a five (5), separate lawsuits, raising almost identical claims, including both physical and sexual abuse, to those contained within this complaint, including complaints for excessive force, fondling, groping, sodomy, and rape have been filed against Summit Academy and/or the other related named Defendants.

18. Because of Defendants' conduct, Plaintiffs and those similarly situated have suffered and continue to suffer harm, including emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, all of which adversely affects

their .daily activities and the full enjoyment of life. Plaintiffs and others similarly situated have and will in the future sustain loss of earnings and earning capacity and have, and will, incur expenses for medical and psychological treatment, therapy, and counseling.

19. Accordingly, Plaintiffs make individual claims for the abuse they suffered and bring on behalf of others similarly situated a class action for injunctive relief to enjoin Defendant from continuing conduct that threatens imminent harm to the proposed class.

20. Plaintiffs bring this lawsuit to hold Summit Academy accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Summit Academy's care.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), because Plaintiffs allege actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034, in addition to 28 U.S.C. § 1343, and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

22. At all relevant times, all Defendants acted under the color of state law.

23. This Court has subject matter jurisdiction over class claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because: (1) Plaintiffs seek to represent a nationwide class of individuals who were sexually, physically and/or emotionally abused at Summit Academy; (2) the amount in controversy exceeds $5,000,000, excluding interest and costs; (3) the proposed class consists of more than 100 individuals; and (4) none of the exceptions under the subsection applies to this action.

24. This Court has subject matter jurisdiction over individual claims brought by Plaintiffs, based on the diversity of the parties pursuant to 28 U.S.C. § 1332. Defendant Summit Academy is a citizen of the state of Pennsylvania, where they are headquartered, incorporated, and operate their principal places of business. Plaintiff Bailey is a citizen of Maryland. The amount in controversy, without interest and costs, exceeds $75,000.

25. This Court has supplemental jurisdiction for the state law claims, pursuant to 28 U.S.C. §1367.

26. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events and/or omissions giving rise to the claim occurred occurred in this district.

## PARTIES

27. Plaintiff is **Ronnie Vincent Quann**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

28. Plaintiff is **Devon Batista**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

29. Plaintiff is **William May**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

30. Plaintiff is **Sharief Clayton**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

31. Plaintiff is **Robert Borders**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

32. Plaintiff is **Kyle Mikell-Givens**, an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

33. Plaintiff is **Saheed Bailey**, an individual and resident of the United States of America, and the State of Maryland.

34. Defendant, **Summit Academy** is a registered business with a corporate headquarters office at 839 Herman Road Herman, PA 16039.

35. Defendants John/Jane Does 1-100 are current and former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children at the School.

## TOLLING OF STATUTE OF LIMITATIONS

36. The statute of limitations is tolled based on the doctrines of continuing violations and fraudulent concealment.

37. The statute of limitations is also tolled based on the decisions in American Pipe[1] and its progeny.

38. Upon information and belief, physical, emotional, and/or sexual abuse of Summit Academy patients occurred as early as 1998, and has continued until at least 2019, if not the present.

39. Tolling of the statute of limitations based on fraudulent concealment occurs where the entity liable for the claim fraudulently conceals the existence of the claim or the identity of any person liable for the claim from the knowledge of the person entitled to sue and to satisfy the equitable principle of fraudulent concealment in order to toll the statute of limitations, in Pennsylvania, case law agree that Plaintiffs must show: (1) successful concealment of the causes of action; and (2) fraudulent means to achieve that concealment[2].

40. Summit Academy concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had causes of action against them at the time the physical, emotional, and sexual abuse occurred by making material representation(s) to Plaintiffs involving a past or existing fact by, including but not limited to:

   a. Misrepresenting that the abuse experienced by Plaintiffs was part of their treatments, in part by accompanying the abuse with actual medical treatments including during therapeutic sessions

   b. Misrepresenting that the abuse experienced by Plaintiffs was appropriate by taking advantage of the vulnerability of patients who were looking for adults whom they could trust and who made them feel safe, including by: building trust with patients as a method of grooming them for sexual abuse, bringing gifts to their patients, providing patients with extra privileges, and exchanging "love letters" with their patients

---

[1] *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)
[2] *See Fine v. Checcio*, 870 A.2d 850, 860 (Pa. 2005)

    c. Representing that Summit Academy's physical, emotional, and sexual abuse of Plaintiffs was normal, medically necessary, proper, appropriate, legitimate, and/or medically beneficial, generally;

    d. Representing that Summit Academy was not physically, emotionally, and sexually assaulting Plaintiffs;

    e. Representing that Plaintiffs should not question and/or report the conduct to appropriate authorities; and

    f. Representing that there was no possible cause of action against Summit Academy.

41. The material representation(s) to Plaintiffs were false in that Summit Academy was actually physically, emotionally, and sexually violating Plaintiffs.

42. When Summit Academy made the material representation(s), they knew or should have known that the representations were false in that the treatment of Plaintiffs was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty.

43. Summit Academy made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they had previously received strikingly similar complaints of physical, emotional, and sexual abuse by Summit Academy staff from other previous patients and knew that the appropriateness of their conduct had been questioned in the past.

44. Defendant's representations were material, in that had Plaintiffs known the representations were false, they would have stopped seeking treatment from Summit Academy immediately.

45. Summit Academy made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs in that Plaintiffs should believe that their treatment at Summit Academy's facilities was proper, appropriate, and legitimate; should not believe that they had been abused; should continue to be treated at Summit Academy's facilities so that the abuse could continue;

should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Summit Academy.

46. Plaintiffs acted in reliance upon the material representation(s) in that they: (a) reasonably believed that their treatment was proper, appropriate, and legitimate; (b) reasonably did not believe that they had been physically, emotionally, and sexually abused; and (c) did not believe that they should question and/or report the conduct to appropriate authorities.

47. In addition to affirmative false representations, Defendant failed to disclose to Plaintiffs that they were being abused and that Summit Academy had a history of committing physical, emotional, and sexual assaults in the guise of medical treatment.

48. Defendant's representations caused Plaintiffs to be exposed to the risk of physical, emotional, and sexual abuse by Summit Academy staff, and to actually be physically, emotionally, and/or sexually abused by Summit Academy staff.

49. Summit Academy is equitably estopped from relying upon a statute of limitations defense because of its gross negligence and silence as well as its active and deliberate efforts to deceive Plaintiffs and to conceal their unlawful and grossly negligent conduct. Through its gross negligence and silence, Summit Academy encouraged and influenced Plaintiffs to act to their disadvantage by telling them that their complaints about physical, sexual, and emotional abuse were unfounded, encouraging them to continue seeking treatment at Defendant's facilities and making them feel ashamed, such that Plaintiffs could not discover the nature, scope, and magnitude of Defendant's misconduct. As set forth herein, Defendant also took active steps to misrepresent material facts.

50. Plaintiffs' claims should be equitably tolled because any alleged failure to meet any deadline unavoidably arose from circumstances beyond Plaintiffs' control. Summit Academy concealed material facts regarding Summit Academy's misconduct and for decades Defendant misrepresented and fraudulently concealed this activity and the substantial risks posed by that misconduct.

51. Summit Academy intended for the public, including Plaintiffs, to be deceived by this fraud such that Summit Academy's conduct remained unstopped for decades and the repercussions of their misconduct was not dealt with to the detriment of Plaintiffs. As set forth herein, Defendant knew the actual facts, that Summit Academy staff have been abusing their youth for decades, and that Defendant knowingly did nothing to stop it.

52. Plaintiffs' damages, as herein alleged, were proximately caused by Summit Academy.

53. As minors, Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Summit Academy at the time that such abuse occurred.

## FACTUAL BACKGROUND

A. **Defendants Had A Duty To Provide A Safe And Secure Facility For Juveniles and Provide Educational Opportunities Committed Or Otherwise Housed At The School Pursuant To Constitutional and State Law Mandates.**

54. At all times the Defendant and all its staff members, workers, employees, servants, voluntary, and the like were mandatory reporters pursuant to Pennsylvania law and were required to report any suspected child abuse pursuant to 55 Pa.C.S.A. §3680 *et seq*; 55 Pa.C.S.A. §3800 *et seq*; 42 Pa.C.S.A. §§ 6327(a) *et seq*.; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendant's facility.

55. The Defendant accepted juveniles for placement pursuant to court orders issued from various county and state governmental units.

56. The School serves as a custodial facility for the placement of juvenile court adjudicated youths, aged 11-18, and other at-risk youth. Founded in 1982, the School has provided juvenile residential care since its inception. It claims to assess the unique needs of each student, teach tools for success and offer meaningful opportunities for personal growth.

57. Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Summit Academy programs. Summit Academy offers many clinical, therapeutic, educational and employment

9

programs for children with special needs and their families. Some youth and families receive less-intensive services from Summit Academy such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Summit Academy's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

58. For the children who were abused at a Summit Academy facility, it was almost impossible to get help or stop the abuse because Summit Academy reportedly limited the contact many of them had with the outside world, limiting phone calls thereby trapping children with their abusers.

59. Nor was there any clear and safe mechanism by which victims could report abuse within Summit Academy; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

60. Many of the children who were abused at Summit Academy were vulnerable, intellectually disabled, and already fleeing from abuse.

61. Summit Academy staff members also took advantage of children who had already been victims of sexual abuse and were at Summit Academy to seek healing.

62. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a

group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene[3].

63. Despite Defendant's awareness of decades of systematic sexual and physical abuse of children in its care, Summit Academy has failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth.31 Summit Academy acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Summit Academy facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

64. Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Summit Academy has failed to enact sufficient measures to ensure the safety of their youth.

65. Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

66. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

67. Indeed, Summit Academy's culture of indifference to the safety and well-being of its patients has caused abuse and sexual violence to flourish at Summit Academy for decades and this toxic culture continues to thrive to this day, even affecting staff.

68. These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Summit Academy program or facility across the nation. This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable

---

[3] https://www.childwelfare.gov/topics/can/factors/

children and young adults, and gave them the impunity to act without the risk of detection or
punishment.

69. Children arrive at Summit Academy facilities seeking treatment, healing, and belonging. For decades,
    Summit Academy has abused the trust that families have placed in it by allowing a culture of abuse,
    exploitation, and trauma.

70. The School is funded in large part by the Commonwealth of Pennsylvania and other government
    jurisdictions and agencies, both inside and outside Pennsylvania, to provide services mandated by law
    for children who have been adjudicated as delinquent in juvenile court.

71. The School asserts it provides a rehabilitative as opposed to a punishment based program for juvenile
    offenders and delinquent youth, including Plaintiffs. The School further states that it provides evidence-
    based programs such as "Positive Behavioral Intervention Supports, Moral Recognition and Coping with
    Anger" to turn its students away from crime.

72. The School has been the recipient of placements and commitments of juveniles from Pennsylvania and
    other states by virtue of its promise of a progressive and effective program for delinquent children, with
    proven services. The School has assiduously sought recognition as a model reform school, and has
    achieved that status, at least for some, as "the Harvard of reform schools." For example, Florida, Texas,
    Ohio, Colorado, Illinois, and many Pennsylvania counties placed juveniles at the School.

73. Defendants have the duty to provide treatment, supervision, and rehabilitation in accordance with
    federal and state Constitutional standards, via the Pennsylvania Juvenile Act, and prevailing standards
    for the care and custody of juveniles in need of treatment and supervision. As detailed in this Complaint,
    Defendants have failed to provide these services in accord with Constitutional, statutory and community
    standards of care.

**B.  Facts as to Ronnie Vincent Quann**

74. While housed at Summit Academy Plaintiff was subjected to physical, mental, and sexual abuse.

12

75. Plaintiff resided at Summit Academy from approximately 2020-2021 when he was approximately 16-17 years old.

76. Plaintiff Quann resided at Summit Academy pursuant to a court-order issued by a judge in the Philadelphia County Court of Common Pleas.

77. Staff member Robert Hughes on multiple occasions would pull Plaintiff into a side closet and hit Plaintiff all over his body with a broom stick or his fists.

78. Robert Hughes would punch Plaintiff multiple times in various places on his body during each incident.

79. Staff member Hughes would purposefully take Plaintiff to areas of the facility without cameras to abuse Plaintiff.

**C. Facts as to Devon Batista**

80. Plaintiff was housed at Summit Academy from between approximately 2012 when he was 17 years old.

81. Two staff members on the 3rd floor, Matthew and Jason, kept coming in throughout the night while Plaintiff was sleeping and throwing buckets of ice water on Plaintiff and attacking him.

82. Matthew and Jason would pin Plaintiff to the bed and punch and kick him in his arms, legs, and chest.

83. Then Matthew and Jason would pull down Plaintiff's pants and take turns alternating punches into Plaintiff's genitals, specifically his testicles.

84. Matthew and Jason would also take turns spanking Plaintiff's buttocks.

85. Matthew and Jason then squeezed and twisted Plaintiff's testicles causing him extreme pain.

86. Matthew and Jason would alternate taking turns using a broom to sodomize Plaintiff by repeatedly and violently inserting it into his anus.

87. Matthew and Jason did this 5-6 times throughout the night with each incident lasting around 30 minutes.

88. In a separate incident Plaintiff was removed from the shower by a staff member on the 4th floor for exceeding the 2 minute limit.

89. This staff member placed Plaintiff into a chokehold on the bathroom floor and grabbed Plaintiff's genitals and squeezed them while saying to Plaintiff, "I told you to get out the shower, you want to act tough?"

90. Plaintiff has been unable to have children due to the injuries sustained by the previously mentioned staff members.

91. Plaintiff reported all his sexual abuse to his golf coach who was also a staff member who told him to "man up Batista you'll be home soon and not have to ever about this again."

92. Plaintiff informed his family about his abuse, and his mother called Summit Academy supervisors and staff members on at least 3 separate instances complaining when she say Plaintiff he could barely walk, his legs and arms appeared rigid and stiff, and Plaintiff's difficulty with sitting due to his buttocks being repeatedly smacked and spanked.

**D. Facts as to William May**

93. Plaintiff was housed at Summit Academy from between approximately 2005-2006 when he was 15 years old.

94. A male staff member with red hair who worked on the 5th floor drug and alcohol program with a larger build forced Plaintiff to engage in oral sex in the empty bedrooms on the 5th floor, the gym, and locker room.

95. Plaintiff was forced to place his mouth and tongue onto this staff member's penis and genitals.

96. Plaintiff was forced to engage in oral sex by this staff member on more than 3 instances.

97. Once when Plaintiff refused to perform oral sex this staff member punched Plaintiff in the stomach and struck him so hard in the face Plaintiff's eyebrow was cut and he had to be treated at Butler Hospital.

98. Further a male nurse employed by Defendants gave Plaintiff tobacco, music, and allowed him access to the internet in exchange for sexually abusing Plaintiff by forcing Plaintiff to perform oral sex on this staff member.

99. This male nurse also forced Plaintiff to engage in masturbatory activities at the nurse's direction.

**E. Facts as to Sharief Clayton**

100. Plaintiff was housed at Summit Academy from between approximately 2011-2012 when he was 14 years old.

101. Plaintiff was constantly slapped on his buttocks before, during, and after football games and practices by staff member Steve Shearer.

102. Steve Shearer would often grab and squeeze Plaintiff's buttocks.

103. On one occasion Bill Stoffer took Plaintiff to Steve Shearer's office whereby Steve Shearer told Plaintiff he could get a home pass for sexual favors.

**F. Facts as to Kyle Mikell-Givens**

104. Plaintiff was housed at Summit Academy from between approximately 2012 when he was 17 years old.

105. Plaintiff was informed by staff member Mr. Stoffer his home passes were being revoked due to an incident the previous day in which Plaintiff was restrained and severely hurt by staff members including being elbowed and kicked in the face without being provided medical care.

106. Plaintiff the next day went to Steve Shearer a supervisor at Summit Academy and explained to him the prior abusive incident and how his home passes were revoked.

107. Steve Shearer told Plaintiff he would get his home passes back, then forced Plaintiff to engage in oral sex.

108. Steve Shearer forced Plaintiff to put his mouth and tongue on Steve Shearer's penis and genitals.

109. Steve Shearer forced Plaintiff to perform oral sex on him more than 3 times, in order to receive basic program privileges including phone calls, food, and home passes.

**G. Facts as to Saheed Bailey**

110.

111. On one occasion Bill Stoffer took Plaintiff to Steve Shearer's office whereby Steve Shearer told Plaintiff he could get a home pass for sexual favors.

112. Plaintiff was housed at Summit Academy from between approximately 2014-2015 when he was 14-15 years old.

113. Staff member Jerry would routinely enter the area where Plaintiff and other residents were showering and pull down the shower curtains and strike the students including Plaintiff with a towel across his body including on his genitals.

114. After pulling down the curtain and hitting residents with towels, Jerry would smack Plaintiff's naked buttocks.

115. Jerry sexually assaulted Plaintiff in this manner too many times to recall.

116. In a separate incident Jerry took Plaintiff to the chapel within the facility and made Plaintiff use his hand and place it on Jerry's penis and move it in a stroking motion.

117. Plaintiff was forced to continually stroke Jerry's penis.

118. Jerry then ordered Plaintiff to remove his clothing and then Jerry used his hand to grab Plaintiff's penis and began to stroke and caress Plaintiff's genitals.

## H. Facts as to Robert Borders

119. Plaintiff was housed at Summit Academy from between approximately 2014 when he was 14 years old.

120. During bedtime, staff member Mr. Chad would come into Plaintiff's room and sexually assault him.

121. Mr. Chad forced Plaintiff to perform oral sex, by placing his mouth onto Mr. Chad's penis and genitals.

122. Plaintiff was forced to engage in oral sex by Mr. Chad on more than 3 instances.

123. Mr. Chad would force Plaintiff to engage in sexual abuse including masturbation, fondling, and groping in order for Plaintiff to be able to make a phone call.

**I. Defendants' Violations of the Constitutional Rights of Plaintiffs and the Class, Abuse of Trust, and Violations of the Standard of Care Pursuant to the States and Commonwealth's Respective Laws, Rules, Regulations, and Statutes**

124. The School is situated in a pastoral setting with historic buildings and has been marketed as a sought-after placement for juvenile detention, due to its campus, professed commitment to humane and evidence-based treatment, and successful athletic program.

125. In reality, the School is not idyllic, nor does it provide the services and programs it has advertised. To the contrary, it has for decades failed to provide a safe and secure facility and has abetted and tolerated practices and customs of negligent, reckless, and unconstitutional force and other abuses of those committed for treatment and education.

126. Under its veneer of civility, there is a Dickensian "culture of violence" and intimidation at the School that has severely impacted Plaintiffs and other children through systematic uses of force, threats of longer sentences for those who report the abuse, and detention beyond commitment dates for those students with injuries that would be noticed upon release from the School.

127. Based on the prior news reports, the numerous lawsuits, internal complaints by Plaintiffs and other similarly situated, and the reports by the court monitors the Defendants knew or should have known about child abuse occurring at its facilities.

128. The School's students also reported lying about the abuse and systematic attempt by the School and its staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse to law enforcement and third-party officials with the students often too afraid to report the abuse because they feared retaliation.

129. The pattern of assaults and child abuse was at various times abetted and promoted by threats to students who were prepared to report the abuses, that they would have to go to a worse placement, have their criminal probation violation, their sentences extended, and/or having to do their time all over again.

## CLASS ACTION ALLEGATIONS

130. Plaintiffs bring this action, on behalf of themselves and all others similarly situated, as a class action under Rules 23(a), (b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure.

131. Plaintiffs bring their Injunctive Relief claim individually and as a class action pursuant to Fed. R. Civ. Pro. 23(a) and (b)(2).

132. Plaintiffs will request the Court certify the following class:

**"All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any Summit Academy, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class")."**

133. The definition of juvenile for purposes for this class, includes individuals who were held in custody at any of these Defendants' identified juvenile placement and/or residential care facilities, after their 18th birthday and until their 22nd birthday, and suffered abuse after their 18th birthday and before their 22nd birthday, and their respective statutes of limitations for filing an injury claim had not otherwise expired.

134. The Class excludes all School employees and contractors.

135. Typicality: Plaintiffs' claims are typical of the claims of each class member in that Plaintiffs, like all class members, were enrolled in a Summit Academy program and therefore subjected to the same policy and practice of negligent supervision and systematic abuse by staff. Plaintiffs and the class members were injured through Summit Academy's failure to protect them, and Plaintiffs are advancing the same legal theories on behalf of themselves and the Class.

136. Adequacy: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests and the interests of all other members of the Class are identical, and Plaintiffs are cognizant of their duty and responsibility to the Class. Accordingly, Plaintiffs can fairly and adequately represent the interests of the Class. Moreover, Plaintiffs' counsel are competent and experienced in litigating class actions, including litigation of this kind. Plaintiffs and counsel intend to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

137. Plaintiffs reserve the right to amend or modify the Class definition or create a subclass(es) upon further investigation and following discovery.

138. Commonality: There are numerous questions of law and fact common to the Class. Questions common to the class include:

   a. The extent of Defendant's knowledge of or deliberate indifference to the pattern of abuse and neglect of youth in their programs.

   b. Whether Summit Academy had a duty to implement and enforce more comprehensive rules, regulations, policies, and procedures regarding the staffing, training, supervision, and management of staff at their facilities.

   c. Whether Summit Academy's pattern of negligent staffing constituted a breach of their duty to supervise and care for children who were placed in their custody.

   d. Whether Defendant's polices, practices, and customs failed to satisfy their duty to report abuse as required under federal law for all persons engaged in a professional capacity working with children, such as teachers, social workers and physicians; such persons are required to report incidents of child abuse that occur while such person is engaged in a professional capacity in a federally "contracted" facility. 34 U.S.C. § 23041(a)(1).

   e. Whether Summit Academy's actions caused the Plaintiffs and class members to have been deprived of educational opportunities.

19

    f.   The scope of the injunctive relief and damages to which the Plaintiffs and members of the Class are entitled.

    g.   Whether Defendants violated 42 U.S.C. Section 1983;

    h.   Whether Defendants violated the Fourth, Eighth and Fourteenth Amendments to the United States Constitution;

    i.   Whether Defendants violated 23 Pa. C. S. § 6311, 49 Pa. C. S § 45.402, and all other related state and federal child abuse reporting laws;

    j.   Whether the Defendants violated the respective child abuse reporting statutes, and other related child abuse protection laws for each state where it operated;

    k.   Whether Defendants are liable for negligence;

    l.   Whether Defendants acted in a manner of reckless indifference;

    m.   Whether Defendants knew of the pattern of abuse at the School;

    n.   Whether the School is liable for negligent hiring, retention, and supervision; and

    o.   Whether there was a pervasive environment of abuse at the School that can be remedied by an injunction and/or declaratory relief.

139. Equitable Relief: Class action is appropriate under Rule 23(b)(2) because Summit Academy has acted and refused to act on grounds generally applicable to the Class as a whole, such that final injunctive relief is appropriate with respect to the Class as a whole. Such injunctive relief includes, but is not limited to, the implementation of systemic changes to prevent such conduct in the future as mentioned above.

140. This action, in part, seeks declaratory and injunctive relief, and a writ of mandamus to compel Defendants to meet their obligations under 23 Pa. C. S. § 6311 and 49 Pa. C. S § 45.402 ("Mandatory Reporting Obligations") on both a historical and going-forward basis, and require the School to provide sufficient evidence to the Court that they have and will do so, and to compel Defendants to make a

complete disclosure of all records and information in their possession, custody or control during the time period from January 1, 2000 to the present pertaining to the abuse of children and students at the School. Plaintiffs request that the Court appoint a special master or undertake other appropriate measures to ensure that sensitive information about the victims of Defendants' abuse remains confidential (unless authorized by a victim/survivor) and, additionally, provide a mechanism for the victims of abuse to review records pertaining to them to verify that they exist, are accurate and complete, and are available to be reviewed by Pennsylvania government officials and law enforcement. As such, class certification under Fed. R. Civ. P. 23(b)(2) is appropriate.

141. All Class members were subject to a pattern or practice of similar abuse. Defendants acted on grounds generally applicable to all Class members, making final equitable relief to the Class as a whole appropriate.

142. The members of the Class are so numerous that joinder of all members in one action is impracticable. Hundreds, and possibly thousands of boys have attended the School and been subjected to the widespread abuse occurring at the School. The Class members can be identified in the discovery process through Defendants' records and the records of the jurisdictions that placed students at the School. Furthermore, notice can be provided by the Court to all persons who have attended the School so that those who have been abused will have the opportunity to report the abuse in a safe environment.

143. Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all Class members were harmed in a similar fashion by Defendants' wrongful and abusive conduct while attending the School.

144. Plaintiffs seek to hold Defendants accountable for the wrongs they have committed and to make the Class whole. Plaintiffs are committed to fairly, adequately, and vigorously representing and protecting the interests of the Class. Plaintiffs have retained the undersigned counsel who are qualified and experienced in class action litigation of this kind. Neither Plaintiffs nor their counsel have any interests

21

that might cause them to refrain from vigorously pursuing the claims in this action. In addition, Defendants have no defenses unique to Plaintiffs.

145. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Defendants' conduct described in this Complaint stems from common and uniform conduct and practices, resulting in common violations.

146. It would be difficult for many of Class members to pursue individual relief due to the nature of the harm, distance from Pennsylvania and because they were court-reported to the School as adjudicated youths. In addition, many of the Class members come from low-income homes, lack resources, and consequently, are particularly vulnerable to Defendants' abuse, especially without means of redress via a class action.

147. It would be virtually impossible for individual Class members to obtain effective relief, including, without limitation, effective injunctive and declaratory relief, from Defendants' actions absent certification of a class action.

148. Individual litigation of multiple cases would be highly inefficient and a waste of judicial and party resources. Moreover, the prosecution of separate actions by individual members of the Class would create a risk of inconsistent results.

149. Class members do not have an interest in pursuing separate actions against Defendants, as the amount of each Class member's individual claim is small compared to the expense and burden of individual prosecution.

150. Plaintiffs are aware of no difficulties regarding the management of this litigation which would preclude its maintenance as a class action.

151. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Class members' claims in a single forum where the School resides and where the acts of abuse alleged herein took place.

## **CAUSES OF ACTION**

### **Federal Claims Pursuant to the United States Constitution**

### **COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 *et seq.* – Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment**

152. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

153. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

154. Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment—including sexual assault—by school employees, students, and third parties.

155. Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

156. The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

157. Plaintiffs are "persons" under Title IX.

158. Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

159. Defendant receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

160. Under Title IX, Summit Academy was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

161. Plaintiffs were subject to sexual harassment, abuse and assault by Summit Academy staff members while students, patients, and/or residents at Defendant's facilities and programs as described above, including: experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sexual contact with a minor; and repeated sexual grooming behaviors.

162. The sexual harassment, abuse, and assault experienced by Plaintiffs at Summit Academy constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX[4].

163. Summit Academy was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX, including through complaints by Plaintiffs directly to Summit Academy staff that they were being abused and assaulted.

---

[4] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html

164. Summit Academy is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Summit Academy youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

165. Summit Academy is responsible for setting and approving all national, organization-wide policies and protocols for Summit Academy programs and operations, including sex discrimination policies.

166. Summit Academy failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

167. By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

168. The sexual harassment, abuse, and assault experienced by Plaintiffs at Summit Academy was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiffs.

169. As a direct and proximate result of Defendant's actions and/or inactions, Plaintiffs were damaged.

170. Summit Academy was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

   a. Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;

   b. Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Summit Academy;

   c. Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Summit Academy residents and patients;

d. Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

e. Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

171. Summit Academy's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

172. Because Summit Academy failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

173. In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

174. Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 2 – Violations of Title IX 20 U.S.C. § 1681(A) *et seq.* – Deliberate Indifference to Prior Sexual Harassment**

175. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

176. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

177. Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

178. Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

179. Summit Academy regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

180. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

181. Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

182. Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment—including sexual assault—by school employees, students, and third parties.

183. Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

184. Before Plaintiffs were abused while at Summit Academy, Summit Academy had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

185. Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Summit Academy.

    a. Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;

    b. Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;

    c. Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;

    d. Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and

    e. Improving Summit Academy's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.

186. With this knowledge, Summit Academy had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

187. Summit Academy's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

28

188. By its acts and omissions, Summit Academy was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Summit Academy.

189. As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Summit Academy's programs.

190. Because Summit Academy did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

191. The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Summit Academy.

192. In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

193. Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 3 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*) –Civil Rights Deprivation

194. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

195. While obtaining an education and otherwise residing at the Defendant's facility Plaintiffs had a right to have their civil rights protected and safeguarded.

196. The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution protect Plaintiffs and the Class from physical and sexual abuse and unreasonable uses of force from Defendants. These Amendments also require Defendants to establish policies and practices to protect Plaintiffs and the Class from known harms and known patterns of constitutional deprivations.

197. The School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

198. The School failed, with deliberate indifference, to provide a safe custodial setting for Plaintiffs and the Class, by failing to properly train, supervise, and discipline the staff at the School, including all John Does. As a proximate result of the School's policies, practices, and customs, the Defendants, and the John Doe Defendants subjected and/or allowed to be subjected, Plaintiffs and the Class to physical and/or sexual abuse.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### Pennsylvania State Law Claims

### COUNT 4 – Negligence

199. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

200. Defendant had a duty to act reasonably and to maintain a safe environment for Plaintiffs and the Class while within the Defendant's care.

201. Summit Academy acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Summit Academy facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Summit Academy programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Summit Academy facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Summit Academy programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Summit Academy programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Summit Academy programs.

202. Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

203. By failing to exercise ordinary care through their acts and omissions, Summit Academy caused harm to Plaintiffs.

204. Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment

interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 5 – Negligent Hiring

205. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

206. Summit Academy is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendant's programs.

207. Summit Academy knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags", Summit Academy would have known that these employees were not suitable for the particular duty of caring for children.

208. It was unreasonable for Summit Academy to hire employees whom Summit Academy should have known, based on reasonable pre-hiring screening, were unsuitable to work in a behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

209. As detailed above, Plaintiffs were harmed by various Summit Academy staff members. These harms include: physical abuse, sexual assault, and withholding meals.

210. Because of Summit Academy's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Summit Academy shown due care in the screening of its employees, Summit Academy staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment

interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 6 – Negligent Retention

211. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

212. Summit Academy became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Summit Academy patients and residents, and yet failed to investigate, discharge, or reassign these employees.

213. Summit Academy reasonably should have known that its staff physically and sexually abused Plaintiffs while in their care. With reasonable supervision, protocols, and checkpoints in place, Summit Academy should have been aware of these egregious acts. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

214. Summit Academy reasonably should have known that Summit Academy staff verbally and physically abused Plaintiffs. Plaintiffs even reported this abuse to Summit Academy, putting them on actual notice of their employee's bad acts. Summit Academy also should have known staffers routinely watched and groomed Plaintiffs for sexual abuse. With reasonable supervision and protocols in place, Summit Academy should have known about each of these incidents. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

215. Summit Academy reasonably should have known that Summit Academy staff abused Plaintiffs via withholding food from them as punishment. Had Summit Academy adequately supervised its employees, Summit Academy reasonably would have known about these incidents. Despite the fact that

Summit Academy reasonably should have known about this abuse, it allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

216. Summit Academy reasonably should have known that a Summit Academy staff members named herein this Complaint sexually abused Plaintiffs on the Defendant's property. Had Summit Academy adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

217. Summit Academy reasonably should have known that multiple male Summit Academy staffers were physically abusing Plaintiffs. Had Summit Academy adequately and appropriately supervised and exercised control over its staff, Summit Academy would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Defendant reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

218. Summit Academy reasonably should have known, and did in fact know, Plaintiffs were abused by Summit Academy staff members when multiple Plaintiffs showed physical signs of abuse, including marks on their bodies and an extremely swollen arms, legs, and wrists. Despite Summit Academy's knowledge via repeated reports about staff members named herein this Complaint and others employed by them yet did not independently investigate, transfer, or fire this employee, instead allowing the abuse of Plaintiffs to happen time and time again.

219. Defendant reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendant's breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously harmed.

34

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 7 – Negligent Supervision

220. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

221. Defendant, Summit Academy, knew or should have known of the need to properly and effectively observe, manage, direct, oversee, and/or supervise staff, teachers, counselors, employees, agents, servants, representatives, and/or ostensible agents in their relationships with young children.

222. Defendant, Summit Academy, knew or should have known of the particular risk posed by the staff members named within the Complaint and others based on, among other things, their inappropriate and/or questionable conduct, their history of sexually, physically, and/or emotionally abusing children, and/or their behavior indicative of an intent to isolate, groom, and/or facilitate sexually contacting and/or abusing a young minor child, including the abuse by the staff members named within the Complaint and others and/or other staff members of Plaintiffs.

223. The staff members named within the Complaint and others and/or other staff members' sexual abuse of Plaintiff gradually increased in frequency and intensity over time.

224. The negligence, carelessness, and/or recklessness of Defendant, Summit Academy, for the conduct of their actual or apparent staff, teacher, counselors, employees, agents, servants, representatives, and/or ostensible agents, in the hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members consists of one or more of the following:

225. Negligent hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of staff and/or teachers and/or counselors in the employ of Summit Academy and/or Defendant;

226. Failing to use due care in hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members and the relationship of the staff members named within the Complaint and others and/or other staff members with Plaintiffs; and

227. Failing to investigate and supervise the staff members named within the Complaint and/or other staff members and their relationship with Plaintiffs.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 8 – Gross Negligence

228. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

229. Summit Academy owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

230. Summit Academy acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

231. At all relevant times, Summit Academy owed a duty to Plaintiffs to implement practices and policies to:

    a. Prevent sexual, emotional, and physical abuse of youth by Summit Academy staff;

b. Prohibit and prevent romantic or sexual relationships between youth and Summit Academy staff;

c. Prohibit grooming and other sexually exploitative behavior by Summit Academy staff;

d. Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Summit Academy programs by staff or by peers;

e. Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Summit Academy programs;

f. Mandate the training of all staff who work directly with youth in Summit Academy programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

g. Protect Plaintiffs and from such abuse and foreseeable risks; and

h. Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

232. Defendant's duty arose from taking responsibility for the care and custody of youth attending their programs.

233. Summit Academy acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Summit Academy for treatment, growth, and education, including Plaintiffs.

234. Summit Academy knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Summit Academy created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

235. As one of the nation's largest behavioral healthcare organizations, Summit Academy is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm

resulting from the failure to closely monitor, train, and supervise their staff. Summit Academy thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

236. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.134

237. By recklessly failing to keep these children safe while in its care and custody, Summit Academy exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

238. As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Summit Academy.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 9 – Negligent Misrepresentations and Omissions

239. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

240. In the course of their business, Defendant presents itself as maintaining a gold standard in the field of behavioral health treatment for troubled youth. Summit Academy's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress. Summit Academy details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."

241. Defendant's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols through an evolved culture of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices. Through its advertising, Summit Academy represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Summit Academy failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

242. Summit Academy's website and advertising misrepresents material facts regarding the quality of its programs, as Summit Academy fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendant's representations were not true, as Summit Academy negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

243. Plaintiffs and their family members relied on Defendant's representations about the quality of their programs in choosing to enroll in treatment at Summit Academy.

244. Summit Academy knew or should have known that the representations about the quality of their programs – especially the safety and security of their patients, students and residents – would be relied upon by those individuals and their families.

245. Plaintiffs were harmed because of Summit Academy's negligent misrepresentations about the safety and security of their programs. Plaintiff parents and guardians reasonably relied on Summit Academy's representations of safety and security, and were thereby harmed when they unknowingly placed their children in Summit Academy's custody.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 10 – Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*

246. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

247. The UTPCPL prohibits acts of unfair competition and "unfair or deceptive acts or practices."

248. Summit Academy is a "person" as defined by 73 P.S. § 201-2 and has engaged in "trade" or "commerce" as defined by 73 P.S. § 201-2.

249. Plaintiffs are "person[s]" as defined by 73 P.S. § 201-2 who, through their parents and/or guardians, purchased behavioral health treatment services from Summit Academy.

250. Summit Academy's acts and practices were intended to and did result in the continued sale of services to Plaintiffs, and those acts and practices violated the UTPCPL, 73 P.S. § 201-2, including by:

   a. Representing that their services had characteristics or benefits that they did not have;

   b. Representing that their services were of a particular standard, quality or grade, when they were not;

   c. Advertising services with intent not to sell them as advertised; and

    d. Engaging in any other fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding.

251. Summit Academy's acts and practices violated the UTPCPL because Summit Academy failed to disclose information that was material to Plaintiffs' transactions with them:

    a. When advertising its services as a behavioral health provider, Summit Academy knowingly and intentionally failed to disclose and actively concealed that it did not have reasonable and appropriate safeguards, systems and processes in place to safely provide care and treatment free from abuse for Plaintiffs.

    b. Summit Academy knowingly and intentionally failed to disclose and actively concealed that youth in Summit Academy programs had for decades been victims of sexual, physical, and emotional abuse by Summit Academy staff, and that Summit Academy did not take appropriate actions in response to this known abuse.

252. Summit Academy had ample means and opportunities to alert Plaintiff sat the outset to the fact that it was not employing appropriate processes, protocols, and safeguards to reasonably protect the youth in its programs and facilities. Summit Academy later had means and opportunities to alter Plaintiffs and their family that Plaintiffs had suffered abuse while being treated in one of Defendant's behavioral health centers, yet failed to do so.

253. Plaintiffs and their families justifiably and reasonably relied on the assurances, promises, and representations Summit Academy made regarding the safety, security of their treatment centers. Had Summit Academy made the above disclosures, revealing to Plaintiffs and their families that in reality, Summit Academy's patient were prone to frequent sexual, physical, and emotional abuse by staff, and that Summit Academy did not have adequate procedures and policies in place to adequately protect and care for vulnerable children, Plaintiffs would not have been sent to Summit Academy for their treatment.

254. Summit Academy had the duty to accurately disclose the nature, safety, and quality of its behavioral health centers because it made partial representations about the safety and quality of its facilities. Summit Academy volunteered this specific information to Plaintiffs through advertising, on its website, and in documents that its behavioral health treatment centers provided high quality services, including representations that Summit Academy places a great emphasis on the safety and security of its programs. Summit Academy had superior and exclusive knowledge about the actual safety of its facilities and programs compared to Plaintiffs, yet actively concealed this information from Plaintiffs and their families.

255. As a direct and proximate result of Defendant's deceptive acts and practices in violation of the UTPCPL, Plaintiffs have suffered actual damages caused by the sexual and/or physical abuse they endured while at Summit Academy. Summit Academy's misleading statements and omissions were a substantial factor in causing Plaintiffs' harms.

256. Plaintiffs are accordingly entitled to actual damages, equitable relief, reasonably attorneys' fees and costs, declaratory relief, and a permanent injunction enjoining Summit Academy from its unlawful, fraudulent and deceitful activities.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 11 – Vicarious Liability

257. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

42

258. When each Plaintiff was sexually, physically, and/or emotionally abused by Summit Academy staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Summit Academy patients.

259. Summit Academy is vicariously liable under the doctrine of *respondeat superior* for the tortious conduct committed by their staff members during their staff's treatment of children at Summit Academy.

260. Summit Academy staff members' sexual, physical, and/or emotional abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

261. Summit Academy ratified their staff members' abusive conduct towards Plaintiffs by failing to discipline, take corrective action, and/or report the child abuse. For decades, Summit Academy has sanctioned this culture of abusive behavior by their staff, as described above.

262. These tortious acts were also foreseeable, as Summit Academy was aware of repeated incidents of sexual, physical, and emotional abuse of Summit Academy patients within their facilities. Summit Academy knew that their patients, including Plaintiffs, were particularly susceptible to abuse as youth with disabilities and critical mental health needs. Summit Academy knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

263. As a direct and proximate result of Summit Academy's employees' abuse towards Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment

interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 12 – Negligent Infliction of Emotional Distress

264. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

265. Pursuant to Pennsylvania law, Summit Academy's negligent acts and omissions constitute the negligent infliction of emotional distress, as: 1) Summit Academy acted negligently, as described above; 2) Summit Academy's negligence placed Plaintiffs in the zone of danger of physical impact or injury, as each plaintiff was physically abused by Summit Academy staff; and 3) Plaintiffs suffered emotional distress as a result of Summit Academy's negligent conduct. Pa. SSJI (Civ) § 13.40; .

266. Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

267. Plaintiffs and the Class suffered physical injury as a result of Defendants' conduct.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 13 – Intentional Infliction of Emotional Distress

268. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

269. Defendant's conduct is extreme and outrageous.

270. Summit Academy's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Summit Academy acted

with the reckless disregard of the probability that Plaintiffs would suffer emotional distress as a result. Pa. SSJI (Civ) § 17.40;

271. Summit Academy's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

272. Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

273. By permitting a culture of systematic physical, emotional, and sexual abuse at Summit Academy facilities, Summit Academy caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms, and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 14 – Breach of Fiduciary Duty

274. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

275. Summit Academy, as a service provider for youth with disabilities and advanced behavioral and mental health needs, owes a fiduciary duty to act in the best interests of the youth they serve. When a

child is placed in a Summit Academy facility, Summit Academy assumes the fiduciary duty to ensure that the child receives appropriate care and is safe from foreseeable harms.

276. By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Summit Academy programs, inadequately training and supervising Direct Support Professionals, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiffs' wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Summit Academy has breached their fiduciary duty towards Plaintiffs.

277. Plaintiffs were thereby harmed by Defendant's breach of this fiduciary duty.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 15 – Assault and Battery (Quann v Summit Academy)

278. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

279. While residing at Summit Academy as a minor, Defendant's staff members punished Plaintiff Quann by using excessive force in restraining him causing him extreme injury.

280. Plaintiff did not and could not consent to these grievous harms and abuses.

281. These intentional acts of bodily harm acts with a minor constitute assault and battery by Summit Academy.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment

interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 16 – Injunctive and Equitable Relief

282. Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

283. Class members are currently at risk of irreparable harm due to Defendant's failure to enact and enforce appropriate and sufficient policies, procedures, and processes for the prevention of physical, emotional, and sexual abuse of youth enrolled in their programs and residing in their facilities. On behalf of the Class, Plaintiffs seek injunctive and equitable relief requiring Summit Academy to implement institution-wide policies and practices to prevent continued abuse within their programs.

284. The risk of irreparable harm that Plaintiffs and Class Members face is higher than the general societal risk of these harms, and that increased risk is directly traceable to the actions and inactions of Summit Academy.

285. These harms through which Summit Academy has placed Plaintiffs and Class Members at risk are irreparable. Child abuse, whether it be physical, emotional, or sexual abuse, and the trauma, pain, and suffering that it creates, cannot be undone. Youth, especially youth with disabilities and advanced mental health and behavioral needs, carry the trauma they endured as children with them for the rest of their lives. No monetary compensation can reverse this pain. Therefore, proactive injunctive relief is necessary to eliminate the increased risk posed by Defendant's actions and inactions in order to protect Plaintiffs and Class Members from irreparable harm.

286. The common injury suffered by Plaintiffs and the Class – being placed at heightened risk of sexual, physical, and emotional abuse and assault by Summit Academy – will be redressed by the requested injunctive relief.

47

    a.  Protect students from physical, emotional, and sexual abuse while placed in Summit Academy programs and facilities;

    b.  Promptly and thoroughly report known and reasonably suspected of physical, emotional, and sexual abuse at Summit Academy;

    c.  Properly respond to this child abuse when it occurs; and

    d.  Supervise, monitor, and prevent Summit Academy staff from committing acts of abuse against child patients and residents.

287. Summit Academy has a duty, triggered by federal and state law, to protect its patients and residents. This duty includes a responsibility to:

    a.  Protect students from physical, emotional, and sexual abuse while placed in Summit Academy programs and facilities;

    b.  Promptly and thoroughly report known and reasonably suspected of physical, emotional, and sexual abuse at Summit Academy;

    c.  Properly respond to this child abuse when it occurs; and

    d.  Supervise, monitor, and prevent Summit Academy staff from committing acts of abuse against child patients and residents.

288. Summit Academy has breached its duty towards Plaintiffs and Class Members by failing to implement and enforce necessary and appropriate policies, procedures, and protocols to prevent and address incidents of child abuse in Summit Academy's programs and facilities.

289. Accordingly, Plaintiffs, on behalf of themselves and the Class, request that the Court issue an Order requiring Summit Academy to implement and enforce best-practice policies and procedures for the prevention of, and response to, physical, emotional, and sexual abuse at Summit Academy.

290. In crafting their specific injunctive relief demands, Plaintiffs intend to consult with experts to

    determine the best practices that should be implemented in order to prevent further child abuse at

    Summit Academy. By way of example, such policies and practices may include:

    a.  rigorous hiring and screening protocols;

    b.  revised guidelines governing interactions between staff and youth;

    c.  robust sexual reactivity training for Direct Support Professionals (DSPs);

    d.  improved training for DSPs regarding de-escalation techniques;

    e.  increased supervision of DSPs, especially during the most vulnerable nighttime windows;

    f.  compliance with physical building requirements to increase visibility such that individuals

        cannot commit abuse in concealed areas; and

    g.  improved video monitoring infrastructure.

### PRAYER FOR RELIEF

291. Plaintiffs alleges and incorporates via reference the allegations contained in all the above paragraphs,

    as fully as though the same were set forth herein.

292. Plaintiffs, individually and on behalf of the Class, respectfully request the Court to enter judgment on

    their behalf and on behalf of the Class as follows:

    a.  Certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, as requested above,

        appointing Plaintiffs as Class representatives, and appointing Plaintiffs' counsel as counsel for

        the Class;

    b.  Issuing appropriate notice to the Class at Defendants' expense;

    c.  Declaring that Defendants have violated their Mandatory Reporting Obligations;

    d.  Ordering Defendants to meet their obligations under 23 Pa. C. S. § 6311 and 49 Pa. C. S §

        45.402, and all other applicable child abuse reporting laws, for all states in which they operate,

on both a historical and going-forward basis and supply sufficient evidence to the Court they have and will continue to do so;

e. Ordering Defendants to make a complete disclosure of all records and information in their possession, custody, or control during the time period from January 1, 2000, to the present pertaining to the abuse of students at the School. Plaintiffs request that the Court appoint a special master and/or take other appropriate measures to ensure sensitive information about the victims of Defendants' abuse remains confidential (unless authorized by a victim/survivor) and, additionally, provide a mechanism for the victims of abuse to review records pertaining to them to verify that they exist, are accurate, and complete, and are available to be reviewed by Pennsylvania and/or other government officials and law enforcement agents;

f. Ordering appropriate injunctive, declaratory, and other equitable relief;

g. Issuing a writ of mandamus commanding Defendants to report, as required by 23 Pa. C. S. § 6311, all child abuse presently known or suspected by them, and to submit proof of compliance with such order to the Court within 10 days of such order;

h. Awarding Plaintiffs and Class members compensatory, restitutionary, general, consequential, punitive, and exemplary damages in an amount to be determined at trial;

i. Awarding pre-judgment and post-judgment interest as permitted by law;

j. Awarding reasonable attorneys' fees and costs, including expert fees as provided for by law; and

k. Granting such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

293.  Plaintiffs alleges and incorporates via reference the allegations contained in all the above paragraphs,

as fully as though the same were set forth herein at length.

294.  Plaintiffs demand a jury on all claims triable as a matter of right.

Respectfully Submitted,

/S/ David Wesley Cornish, Esquire
David Wesley Cornish, Esquire
Bar ID #: 310865
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor Philadelphia, PA 19102
**ATTORNEY FOR PLAINTIFFS**
*DATE*: February 28, 2023

## VERIFICATION

The facts set forth in the foregoing Complaint are true and correct to the best of the undersigned's

knowledge, information and belief and are verified subject to the penalties for perjury and unsworn falsification

to authorities and/or the tribunal under both state and United States law.

Respectfully Submitted,

/S/ David Wesley Cornish, Esquire
David Wesley Cornish, Esquire
Bar ID #: 310865
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 212-444-2039
**ATTORNEY FOR PLAINTIFFS**
*DATE*: February 28, 2023