| | | |
|---|---|---|
| Ronnie Quann, Devon Batista, William May Jr., Sharief Clayton, Robert Borders, Kyle Mikell-Givens, & Saheed Bailey, (Plaintiffs), | : : : : : | United States District Court Western District of Pennsylvania |
| v. | : : | |
| The Summit School Inc, t/d/b/a The Academy Schools, t/d/b/a The Summit Academy, Philadelphia County Juvenile Probation Department, and John/Jane Does 1-100, (Defendants). | : : : : : | Civil Division - JURY DEMAND 2:24-cv-01143 |

## SECOND AMENDED COMPLAINT

Plaintiffs, Ronnie Vincent Quann ("Quann"), Devon Batista ("Batista"), William May Jr. ("May"), Sharief Clayton ("Clayton"), Robert Borders ("Borders"), Kyle Mikell-Givens ("Mikell-Givens"), and Saheed Bailey ("Bailey") allege as follows, against Defendant The Summit School, Inc. ("Summit Academy" or "School"), Philadelphia County Juvenile Probation Department ("Juvenile Probation"), and John/Jane Does #1-100 ("John/Jane Doe Defendants"), in their official and individual capacities:

## INTRODUCTION

1.    The School operates facilities where juveniles are held in custody in Pennsylvania.

2.    Juvenile Probation has a statutory duty to supervise and assist a child placed on probation or in his protective supervision or care by order of the court or other authority of law.[1]

3.    As such, Defendant Philadelphia County Juvenile Probation Department explicitly, if not implicitly, had an ongoing duty to ensure the well-being and safety of the individuals, specifically Plaintiffs Quann and Bailey.

4.    It is believed, therefore averred, that Defendant Philadelphia County Juvenile Probation Department worked in consort and/or in conjunction with the other defendants herein to supervise,

---

[1] 42 Pa. Stat. and Cons. Stat. Ann. § 6304.

educate, train, monitor, and/or otherwise oversee and maintain the well-being and safety of individuals, including Plaintiffs Quann and Bailey.

5.      The School, by contract and legislation in Pennsylvania, and all the states it operates, has been delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; and (b) to carry out legislatively mandated control and related services, and to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

6.      The Academy Schools offers rehabilitation, education and support services for youth through a trauma- informed approach. Established in Western Pennsylvania and managed by leaders and innovators in the field of juvenile justice, The Academy Schools are both community-based and residential, serving both local and out-of-state students. Available at www.facebook.com/theacademyschools/about/

7.      Instead of fulfilling their promise and solemn responsibility to protect these vulnerable youth, the youth were exposed to predators and abusers. Summit Academy failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law and as a result of the Defendant's misconduct, children in Summit Academy facilities have been reportedly sexually abused - often by Summit Academy staff.

8.      Thus, the School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

9.      The school was acting as an arm of the states and Commonwealth, where it operates, acts under the color of law for 42 U.S.C. § 1983 liability purposes.

10.     In Pennsylvania the Juvenile Court Judges Commission adopted the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system in Pennsylvania) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."

11.     The School also professes to employ a "Balanced and Restorative Justice {BARJ} compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."

12.     The School program includes room and board, clothing, behavior management individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." Available at https://theacademyschools.com/the-summit-academy/

13.     The School offers services for court-adjudicated youth and non-delinquent youth. Available at https://theacademyschools.com/the-summit-academy/

14.     As more fully detailed hereinafter, it is believed Defendant Juvenile Probation failed and/or ignored its statutory and other duties to individuals, including all to their great harm and detriment, which was outrageous.

15.     Defendant Juvenile Probation, at all times relevant hereto, was responsible for placement of post-adjudicated youth in residential programs, including, at the time, the Plaintiffs.

16.     Defendant Juvenile Probation, at all times relevant hereto, acted as the equivalent of a placement agency in placing Plaintiffs at The Summit Academy post-adjudication.

17.     At all times relevant hereto, Defendant Juvenile Probation had a duty to and was required to protect the best interests of the children they were responsible for placing at locations including The Summit Academy.

18.     At all times relevant hereto, Defendant Juvenile Probation had a duty to screen and investigate the employees of The Summit Academy into whose care Defendant, Philadelphia Juvenile Detention Center, placed children including the Plaintiffs.

19.     At all times relevant hereto, Defendant Juvenile Probation had a duty to screen, gather information, and investigate those responsible for working with children at The Summit Academy for signs of possible abuse or neglect.

20.     Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiffs under the Fourth, Eighth, and Fourteenth Amendments, and committed tortious conduct under state law, by subjecting Plaintiffs  to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect them from harm and injuries at the hands of others.

21.     Defendants violated Plaintiffs' state and federal Constitutional equal rights to educational opportunities.

22.     The School caused the injuries and harm to Plaintiffs by failing to properly train, supervise, and discipline the John/Jane Doe Defendants and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

23.     Further, the School and Probation Departments failed to protect Plaintiffs from assaults and abuse by staff and fellow students at the School.

24.     It is believed and therefore averred that the Plaintiffs reported the sexual abuse and harassment to individuals at Summit Academy who were in positions of authority and had the ability to take corrective action, including but not limited to supervisors, counselors, and other staff members at the facility.

25.     Despite Plaintiffs' disclosures, these individuals either turned a blind eye to the abuse or engaged in additional sexual abuse of the Plaintiffs, thereby compounding the harm and further subjecting Plaintiffs to a hostile and abusive environment.

26.     It is further believed and therefore averred that the agents, supervisors, and counselors of Defendant created an environment of fear, intimidation, and coercion that discouraged and effectively prevented the Plaintiffs from reporting the abuse beyond the supervisors and staff within the facility. This environment included but was not limited to, threats of retaliation, isolation, and further mistreatment if Plaintiffs attempted to report the abuse to authorities outside of the facility.

27.     The individuals to whom the abuse was reported were appropriate persons under Title IX, as they had the authority to address the discrimination and take corrective measures on behalf of the Defendants. However, these individuals, acting as agents of the Defendant, failed to take any reasonable steps to protect Plaintiffs from further abuse or to investigate the reports of misconduct.

28.     The School itself and by and through its staff members, individually and collectively, deprived the Plaintiffs and others similarly situated of their constitutionally guaranteed right to an education and equal educational opportunities.

29.     The School has failed to properly protect Plaintiffs, and has shown a reckless disregard and deliberate indifference to the widespread violations of their rights, despite being aware for decades

of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiffs and the children residing at the School.

30.     Plaintiffs bring this lawsuit to hold Summit Academy accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Summit Academy's care.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), because Plaintiffs allege actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034, in addition to 28 U.S.C. § 1343, and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

32.     At all relevant times, all Defendants acted under the color of state law.

33.     This Court has supplemental jurisdiction for the state law claims, pursuant to 28 U.S.C. §1367.

34.     Venue is proper in this district pursuant to 28 U.S.C. §139l(b) in that a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

## PARTIES

35.     Plaintiff is **Ronnie Vincent Quann,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

36.     Plaintiff is **Devon Batista,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

37.     Plaintiff is **William May,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

38.     Plaintiff is **Sharief Clayton,** an individual and resident of the United States of America,

and the Commonwealth of Pennsylvania.

39.     Plaintiff is **Robert Borders,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

40.     Plaintiff is **Kyle Mikell-Givens,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

41.     Plaintiff is **Sabeed Bailey,** an individual and resident of the United States of America, and the State of Maryland.

42.     Defendant, **Summit Academy** is a registered business with a corporate headquarters office at 839 Herman Road Herman, PA 16039.

43.     Defendant, **Philadelphia County Juvenile Probation Department** is a governmental agency with its office at 1501 Arch Street, Philadelphia, PA 19102.

44.     Defendants John/Jane Does 1-100 are current and former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children at the School.

## <u>TOLLING OF STATUTE OF LIMITATIONS</u>

45.     The statute of limitations is tolled based on the doctrines of continuing violations and fraudulent concealment.

46.     The statute of limitations is also tolled based on the decisions in American Pipe[2] and its progeny.

47.     Upon information and belief, physical, emotional, and/or sexual abuse of Summit Academy patients occurred as early as 1998, and has continued until at least 2019, if not the

---

[2] *American Pipe & Constr. Co. v. Utah,* 414 U.S. 538 (1974).

present.

48.     Tolling of the statute of limitations based on fraudulent concealment occurs where the entity liable for the claim fraudulently conceals the existence of the claim or the identity of any person liable for the claim from the knowledge of the person entitled to sue and to satisfy the equitable principle of fraudulent concealment in order to toll the statute of limitations, in Pennsylvania, case law agrees that Plaintiffs must show: (1) successful concealment of the causes of action; and (2) fraudulent means to achieve that concealment[3]

49.     Summit Academy concealed the existence of Plaintiffs' claims and the fact that Plaintiffs had causes of action against them at the time the physical, emotional, and sexual abuse occurred by making material representation(s) to Plaintiffs involving a past or existing fact by, including but not limited to:

> a.     Misrepresenting that the abuse experienced by Plaintiffs was part of their treatments, in part by accompanying the abuse with actual medical treatments including during therapeutic sessions;
> b.     Misrepresenting that the abuse experienced by Plaintiffs was appropriate by taking advantage of the vulnerability of patients who were looking for adults whom they could trust and who made them feel safe, including by: building trust with patients as a method of grooming them for sexual abuse, bringing gifts to their patients, providing patients with extra privileges, and exchanging "love letters" with their patients;
> c.     Representing that Summit Academy's physical, emotional, and sexual abuse of Plaintiffs was normal, medically necessary, proper, appropriate, legitimate, and/or medically beneficial, generally;
> d.     Representing that Summit Academy was not physically, emotionally, and sexually assaulting Plaintiffs;
> e.     Representing that Plaintiffs should not question and/or report the conduct to appropriate authorities; and
> f.     Representing that there was no possible cause of action against Summit Academy.

50.     The material representation(s) to Plaintiffs were false in that Summit Academy was

---

[3] *See Fine v. Checcio,* 870 A.2d 850, 860 (Pa. 2005).

actually physically, emotionally, and sexually violating Plaintiffs.

51.     When Summit Academy made the material representation(s), they knew or should have known that the representations were false in that the treatment of Plaintiffs was not proper, appropriate, legitimate, and/or considered within standard of care by any physician of any specialty.

52.     Summit Academy made the material representations recklessly, without any knowledge of their truth and as a positive assertion, in that they had previously received strikingly similar complaints of physical, emotional, and sexual abuse by Summit Academy staff from other previous patients and knew that the appropriateness of their conduct had been questioned in the past.

53.     Defendant's representations were material, in that had Plaintiffs known the representations were false, they would have stopped seeking treatment from Summit Academy immediately.

54.     Summit Academy made the material representation(s) with the intent that the material representation(s) should be acted upon by Plaintiffs in that Plaintiffs should believe that their treatment at Summit Academy's facilities was proper, appropriate, and legitimate; should not believe that they had been abused; should continue to be treated at Summit Academy's facilities so that the abuse could continue; should not question and/or report the conduct to appropriate authorities; and should not reasonably believe and not be aware of a possible cause of action that they have against Summit Academy.

55.     Plaintiffs acted in reliance upon the material representation(s) in that they: (a) reasonably believed that their treatment was proper, appropriate, and legitimate; (b) reasonably did not believe that they had been physically, emotionally, and sexually abused; and (c) did

not believe that they should question and/or report the conduct to appropriate authorities.

56.     In addition to affirmative false representations, Defendant failed to disclose to Plaintiffs that they were being abused and that Summit Academy had a history of committing physical, emotional, and sexual assaults in the guise of medical treatment.

57.     Defendant's representations caused Plaintiffs to be exposed to the risk of physical, emotional, and sexual abuse by Summit Academy staff, and to actually be physically, emotionally, and/or sexually abused by Summit Academy staff.

58.     Summit Academy is equitably estopped from relying upon a statute of limitations defense because of its gross negligence and silence as well as its active and deliberate efforts to deceive Plaintiffs and to conceal their unlawful and grossly negligent conduct. Through its gross negligence and silence, Summit Academy encouraged and influenced Plaintiffs to act to their disadvantage by telling them that their complaints about physical, sexual, and emotional abuse were unfounded, encouraging them to continue seeking treatment at Defendant's facilities and making them feel ashamed, such that Plaintiffs could not discover the nature, scope, and magnitude of Defendant's misconduct. As set forth herein, Defendant also took active steps to misrepresent material facts.

59.     Plaintiffs' claims should be equitably tolled because any alleged failure to meet any deadline unavoidably arose from circumstances beyond Plaintiffs' control. Summit Academy concealed material facts regarding Summit Academy's misconduct and for decades Defendant misrepresented and

fraudulently concealed this activity and the substantial risks posed by that misconduct.

60.     Summit Academy intended for the public, including Plaintiffs, to be deceived by this fraud such that Summit Academy's conduct remained unstopped for decades and the

10

repercussions of their misconduct was not dealt with to the detriment of Plaintiffs. As set forth herein, Defendant knew the actual facts, that Summit Academy staff have been abusing their youth for decades, and that Defendant knowingly did nothing to stop it.

61.     Plaintiffs' damages, as herein alleged, were proximately caused by Summit Academy.

62.     As minors, Plaintiffs did not know, could not have reasonably known, and were not reasonably aware of a possible cause of action that they had against Summit Academy at the time that such abuse occurred.

## **FACTUAL BACKGROUND**

   **A. Defendants Had a Duty To Provide a Safe And Secure Facility for Juveniles and Provide Education Opportunities Committed of Otherwise Housed at The School Pursuant to Constitutional and State Law Mandates.**

59.     At all times the Defendant and all its staff members, workers, employees, servants, voluntary, and the like were mandatory reporters pursuant to Pennsylvania law and were required to report any suspected child abuse pursuant to 55 Pa.C.S.A. §3680 *et seq;* 55 Pa.C.S.A. §3800 *et seq;* 42 Pa.C.S.A. §§ 6327(a) *et seq.;* and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendant's facility.

60.     Defendant Summit Academy accepted juveniles for placement pursuant to court orders issued from various county and state governmental units.

61.     The School serves as a custodial facility for the placement of juvenile court-adjudicated youths, aged 11-18, and other at-risk youth. Founded in 1982, the School has provided juvenile residential care since its inception. It claims to assess the unique needs of each student, teach tools for success and offer meaningful opportunities for personal growth.

62.     Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Summit Academy programs. Summit Academy offers many clinical, therapeutic,

educational and employment programs for children with special needs and their families. Some youth and families receive less- intensive services from Summit Academy such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Summit Academy's more intensive residential programs include therapeutic boarding schools, therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

63.     For the children who were abused at a Summit Academy facility, it was almost impossible to get help or stop the abuse because Summit Academy reportedly limited the contact many of them had with the outside world, limiting phone calls thereby trapping children with their abusers.

64.     Nor was there any clear and safe mechanism by which victims could report abuse within Summit Academy; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

65.  Many of the children who were abused at Summit Academy were vulnerable, intellectually disabled, and already fleeing from abuse.

66.  Summit Academy staff members also took advantage of children who had already been victims of sexual abuse and were at Summit Academy to seek healing.

67.  The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as

less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden, and children may have limited access to police, advocates, or social services representatives who can intervene[4].

68.    Despite Defendant's awareness of decades of systematic sexual and physical abuse of children in its care, Summit Academy has failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth.31 Summit Academy acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Summit Academy facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

69.    Despite this keen awareness of decades of systematic sexual and physical abuse of children in its care, Summit Academy has failed to enact sufficient measures to ensure the safety of their youth.

70.    Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

71.    The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals *(e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

72.    Indeed, Summit Academy's culture of indifference to the safety and well-being of its

---

[4] https://www.childwelfare.gov/topics/can/factors/

patients has caused abuse and sexual violence to flourish at Summit Academy for decades and this toxic culture continues to thrive to this day, even affecting staff.

73.    These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Summit Academy program or facility across the nation. This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults, and gave them the impunity to act without the risk of detection or punishment.

74.    Children arrive at Summit Academy facilities seeking treatment, healing, and belonging. For decades, Summit Academy has abused the trust that families have placed in it by allowing a culture of abuse, exploitation, and trauma.

75.    The School is funded in large part by the Commonwealth of Pennsylvania and other government jurisdictions and agencies, both inside and outside Pennsylvania, to provide services mandated by law for children who have been adjudicated as delinquent in juvenile court.

76.    The School asserts it provides a rehabilitative program, as opposed to a punishment-based, for juvenile offenders and delinquent youth, including Plaintiffs. The School further states that it provides evidence- based programs such as "Positive Behavioral Intervention Supports, Moral Recognition and Coping with Anger" to tum its students away from crime.

77.    The School has been the recipient of placements and commitments of juveniles from Pennsylvania and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services. The School has assiduously sought recognition as a model reform school, and has achieved that status, at least for some, as "the Harvard of

reform schools." For example, Florida, Texas, Ohio, Colorado, Illinois, and many Pennsylvania counties placed juveniles at the School.

78.     Defendants have the duty to provide treatment, supervision, and rehabilitation in accordance with federal and state Constitutional standards, via the Pennsylvania Juvenile Act, and prevailing standards for the care and custody of juveniles in need of treatment and supervision. As detailed in *this* Complaint, Defendants have failed to provide these services in accord with Constitutional, statutory and community standards of care.

79.     At all relevant times, Plaintiffs Quann and Bailey were adjudicated delinquent and placed under the supervision and care of Defendant Philadelphia Juvenile Probation Department pursuant to the Pennsylvania Juvenile Act, 42 Pa. Stat. and Cons. Stat. Ann. § 6301 et seq.

80.     Defendant Philadelphia Juvenile Probation Department placed Plaintiffs Quann and Bailey at Summit Academy, a juvenile facility that receives federal financial assistance and is therefore subject to the requirements of Title IX.

81.     Title IX mandates that no person, on the basis of sex, shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

82.     While residing at Summit Academy, Plaintiffs Quann and Bailey were subjected to severe physical, emotional, and psychological abuse, including but not limited to, abuse that was discriminatory on the basis of sex as detailed below.

83.     The conditions at Summit Academy created a hostile and abusive environment for Plaintiffs Quann and Bailey, which interfered with their access to the educational and rehabilitative services provided by the facility.

84.     Defendant Philadelphia Juvenile Probation Department had actual or constructive knowledge of the sex-based discrimination and hostile environment at Summit Academy but failed to take any corrective actions to address the discrimination or protect the Plaintiffs from further harm.

85.     Despite its obligations under Title IX, Defendant Philadelphia Juvenile Probation Department was deliberately indifferent to the discrimination and failed to ensure that Plaintiffs Quann and Bailey were placed in a safe, non-discriminatory environment where they could benefit from the educational and rehabilitative services offered by Summit Academy.

86.     As a direct and proximate result of Defendant's deliberate indifference and failure to fulfill its obligations under Title IX, Plaintiffs Quann and Bailey suffered substantial harm, including physical injuries, emotional distress, mental anguish, and other damages.

**B. <u>Facts as to Plaintiff Ronnie Vincent Quann</u>**

87.     Philadelphia Juvenile Probation placed Plaintiff Ronnie Quann at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

88.     While housed at Summit Academy, Plaintiff Quann was subjected to physical, mental, and sexual abuse.

89.     Plaintiff Quann resided at Summit Academy from approximately 2020-2021 when he was approximately 16-17 years old.

90.     At all times material hereto, Robert Hughes was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2020-2021.

91.     Staff member Robert Hughes and another staff member, only identified as Michael, on multiple occasions would pull Plaintiff Quann into a side closet and hit Plaintiff all over his

body with a broomstick or his fists.

92.     Robert Hughes and another staff member, only identified as Michael, would punch Plaintiff multiple times in various places on his body during each incident.

93.     On several occasions, Robert Hughes would grope Plaintiff's genitals through his clothes and squeeze causing serious pain and discomfort.

94.     Staff member Hughes and another staff member, only identified as Michael, would purposefully take Plaintiff Quann to areas of the facility without cameras to abuse Plaintiff Quann.

**C.  <u>Facts as to Plaintiff Devon Batista</u>**

95.     Philadelphia Juvenile Probation placed Plaintiff Devon Batista at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

96.     Plaintiff Batista was housed at Summit Academy in or around 2012, when he was 17 years old. At all times material hereto, Mr. Matthew was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2012.

97.     At all times material hereto, Mr. Jason was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2012.

98.     Mr. Matthew and Mr. Jason would repeatedly enter Plaintiff Batista's dorm while he was sleeping and threw buckets of ice water at Plaintiff and attack him.

99.     Mr. Matthew and Mr. Jason would pin Plaintiff to the bed and punch and kick him in his arms, legs, and chest.

100.    Then Mr. Matthew and Mr. Jason would pull down Plaintiff's pants and take turns

alternating punches into Plaintiff's genitals, specifically his testicles.

101.    Mr. Matthew and Mr. Jason would also take turns spanking Plaintiff's buttocks.

102.    Additionally, Mr. Matthew and Mr. Jason would squeeze and twist Plaintiff's testicles causing him extreme pain.

103.    Mr. Matthew and Mr. Jason would alternate taking turns using a broom to sodomize Plaintiff Batista by repeatedly and violently inserting it into his anus.

104.    Mr. Matthew and Mr. Jason did this five (5) to six (6) times throughout the night with each incident lasting around 30 minutes.

105.    In a separate incident, Plaintiff Batista was removed from the shower by an unknown staff member on the 4th floor for exceeding the 2-minute limit.

106.    The unknown staff member placed Plaintiff Batista into a chokehold on the bathroom floor and grabbed Plaintiff's genitals and squeezed them while saying to Plaintiff, "I told you to get out of the shower, you want to act tough?"

107.    Plaintiff Batista has been unable to have children due to the injuries sustained by the previously mentioned staff members.

108.    Plaintiff Batista reported all his sexual abuse to his golf coach, "Mr. Paul" who was also a staff member.

109.    Mr. Paul told him to "man up Batista you'll be home soon and not have to ever worry about this again."

110.    Plaintiff Batista informed his family about his abuse, and his mother called Summit Academy supervisors and staff members on at least three (3) separate instances to complain.

111.    Plaintiff's mother reported that Plaintiff could barely walk, his legs and arms appeared rigid and stiff, and Plaintiff experienced difficulty sitting due to his buttocks being repeatedly

smacked and spanked.

**D.  Facts as to Plaintiff William May**

112.    Philadelphia Juvenile Probation placed Plaintiff William May at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

113.    Plaintiff May was housed at Summit Academy from approximately 2005-2006, when he was 15 years old.

114.    A male staff member with red hair who worked on the 5th-floor drug and alcohol program with a larger build forced Plaintiff to engage in oral sex in the empty bedrooms on the 5th floor, the gym, and the locker room.

115.    Plaintiff May was forced to place his mouth and tongue onto this staff member's penis and genitals.

116.    Plaintiff May was forced to engage in oral sex by this staff member on more than three (3) instances.

117.    Once when Plaintiff May refused to perform oral sex this unknown staff member punched Plaintiff in the stomach and struck him so hard in the face that Plaintiff sustained a cut to his eyebrow.

118.    Plaintiff May was treated at Butler Hospital for the injury.

119.    In a separate incident, a male nurse, employed by Defendant, in exchange for oral sex gave Plaintiff May tobacco, music, and allowed him access to the internet.

120.    This male nurse also forced Plaintiff to engage in masturbatory activities at the nurse's direction.

**E.  Facts as to Plaintiff Sharief Clayton**

121.    Philadelphia Juvenile Probation placed Plaintiff Sharief Clayton at Summit Academy

pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

122.    Plaintiff Clayton was housed at Summit Academy between approximately 2011-2012, when he was 14 years old.

123.    At all times material hereto, Steve Shearer was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2011-2012.

124.    Plaintiff Clayton was constantly slapped on his buttocks before, during, and after football games and practices by Steve Shearer.

125.    Steve Shearer would often grab and squeeze Plaintiff's buttocks.

126.    Plaintiff Clayton disclosed the abuse to Bill Stoffer, a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy.

127.    The next day, Plaintiff Clayton was summoned to Steve Shearer's office whereby Steve Shearer told Plaintiff he could get a home pass if he never mentioned the incidents again.

**F.   Facts as to Plaintiff Kyle Mikell-Givens**

128.    Philadelphia Juvenile Probation placed Plaintiff Kyle Mikell-Givens at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

129.    Plaintiff Mikell-Givens was housed at Summit Academy in or about 2012 when he was 17 years old.

130.    At all times material hereto, Bill Stoffer was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2011-2012.

131.    At all times material hereto, Steve Shearer was a unit manager and/or staff and/or teacher

and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2011-2012.

132.    On one occasion, Plaintiff Mikell-Givens was informed by Mr. Stoffer that his home passes were being revoked due to an incident the previous day in which Plaintiff was restrained and severely hurt by staff members including being elbowed and kicked in the face without being provided medical care.

133.    The next day, Plaintiff Mikell-Givens went to Steve Shearer and explained the prior abusive incident and how his home passes were revoked.

134.    Steve Shearer told Plaintiff he would get his home passes back, then forced Plaintiff to engage in oral sex.

135.    Steve Shearer forced Plaintiff to put his mouth and tongue on Steve Shearer's penis and genitals.

136.    Steve Shearer forced Plaintiff to perform oral sex on him more than three (3) times, in order to receive basic program privileges including phone calls, food, and home passes.

**G.  Facts as to Plaintiff Saheed Bailey**

137.    Philadelphia Juvenile Probation placed Plaintiff Saheed Bailey at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

138.    Plaintiff was housed at Summit Academy between approximately 2014-2015, when he was 14-15 years old.

139.    At all times material hereto, Mr. Jerry was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2011-2012.

140.    Mr. Jerry would routinely enter the area where Plaintiff Bailey and other residents were

showering and pull down the shower curtains and strike the students, including Plaintiff Bailey, with a towel across his body including on his genitals.

141.    After pulling down the curtain and hitting residents with towels, Jerry would smack Plaintiff's naked buttocks.

142.    Jerry sexually assaulted Plaintiff Bailey in this manner too many times to recall.

143.    In a separate incident, Jerry took Plaintiff Bailey to the chapel within the facility and made Plaintiff use his hand and place it on Jerry's penis and move it in a stroking motion.

144.    Plaintiff Bailey was forced to continually stroke Jerry's penis. Jerry then ordered Plaintiff to remove his clothing and then Jerry used his hand to grab Plaintiff's penis and began to stroke and caress Plaintiff's genitals.

**H.  Facts as to Plaintiff Robert Borders**

145.    Philadelphia Juvenile Probation placed Plaintiff Robert Borders at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

146.    Plaintiff Borders was housed at Summit Academy in approximately 2014, when he was 14 years old.

147.    At all times material hereto, Mr. Chad was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2014.

148.    During bedtime, Mr. Chad would come into Plaintiff's room and sexually assault him.

149.    Mr. Chad forced Plaintiff Borders to perform oral sex, by placing his mouth onto Mr. Chad's penis and genitals.

150.    Plaintiff Borders was forced to engage in oral sex by Mr. Chad on more than three (3) instances.

151.    Mr. Chad would force Plaintiff Borders to engage in sexual abuse including masturbation, fondling, and groping in order for Plaintiff Borders to be able to make a phone call.

I.    **Defendants' Violation of the Constitutional Rights of Plaintiffs, Abuse of Trust, and Violations of the Standard of Care Pursuant to the States and Commonwealth's Respective Laws, Rules, Regulations, and Statutes**

152.    The School is situated in a pastoral setting with historic buildings and has been marketed as a sought-after placement for juvenile detention, due to its campus, professed commitment to humane and evidence-based treatment, and successful athletic program.

153.    In reality, the School is not idyllic, nor does it provide the services and programs it has advertised. To the contrary, it has for decades failed to provide a safe and secure facility and has abetted and tolerated practices and customs of negligent, reckless, and unconstitutional force and other abuses of those committed for treatment and education.

154.    Under its veneer of civility, there is a Dickensian "culture of violence" and intimidation at the School that has severely impacted Plaintiffs and other children through systematic uses of force, threats of longer sentences for those who report the abuse, and detention beyond commitment dates for those students with injuries that would be noticed upon release from the School.

155.    Based on the prior news reports, the numerous lawsuits, internal complaints by Plaintiffs and other similarly situated, and the reports by the court monitors the Defendants knew or should have known about child abuse occurring at its facilities.

156.    The School's students also reported lying about the abuse and systematic attempt by the School and its staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse to law enforcement and third-party officials with the students often too afraid to report the abuse because they feared retaliation.

157.    The pattern of assaults and child abuse was at various times abetted and promoted by threats to students who were prepared to report the abuses, that they would have to go to a worse placement, have their criminal probation violation, their sentences extended, and/or having to do their time all over again.

**CAUSE OF ACTION**
**FEDERAL CLAIMS PURSUANT TO THE UNITED STATES CONSTITUTION**
**COUNT 1 (All Plaintiffs v. Summit Academy)**
**Violation of Title IX 20 U.S.C. § 1681 *et seq.***
**Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment**

158.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

159.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance."

160.    Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment-including sexual assault-by school employees, students, and third parties.

161.    Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

162.    The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

163.    Plaintiffs are "persons" under Title IX.

164.    Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

165.    Defendant Summit Academy receive federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, et seq., and its implementing regulations at 34 C.F.R. §§ 106. l et seq.

166.    Under Title IX, Summit Academy was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

167.    Plaintiffs were subject to sexual harassment, abuse and assault by Summit Academy staff members while students, patients, and/or residents at Defendant's facilities and programs as described above, including experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sexual contact with a minor; and repeated sexual grooming behaviors.

168.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Summit Academy constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX[5].

169.    Summit Academy was on notice of the conduct as described above, but nonetheless failed

---

[5] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html

to carry out its duties to investigate and take corrective action under Title IX, including through complaints by Plaintiffs directly to Summit Academy staff that they were being abused and assaulted.

170.    Summit Academy is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Summit Academy youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

171.    Summit Academy is responsible for setting and approving all national, organization-wide policies and protocols for Summit Academy programs and operations, including sex discrimination policies.

172.    Summit Academy failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

173.    By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

174.    The sexual harassment, abuse, and assault experienced by Plaintiffs at Summit Academy was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiffs.

175.    As a direct and proximate result of Defendant Summit Academy's actions and/or inactions, Plaintiffs were damaged.

176.    Summit Academy was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

> a.   Failing to address children and families' reports of sexual abuse and/or

discouraging youth from reporting such abuse;

b. Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Summit Academy;

c. Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Summit Academy residents and patients;

d. Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and

e. Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

177. Summit Academy's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiffs would be sexually harassed. By failing to set appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

178. Because Summit Academy failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

179. In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

180. Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE**, Plaintiffs, demand judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 2 (All Plaintiffs v. Summit Academy)**
**Violations of Title IX 20 U.S.C. § 1681(A) et seq.**
**Deliberate Indifference to Prior Sexual Harassment**

181.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

182.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

183.    Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides:"… A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

184.    Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

185.    Summit Academy regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq.

186.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

187.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

188.    Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment-including sexual assault-by school employees, students, and third parties.

189.    Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

190.    Before Plaintiffs were abused while at Summit Academy, Summit Academy had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

191.    Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Summit Academy.

192.    With this knowledge, Summit Academy had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

    a.      Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;
    b.      Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;
    c.      Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;
    d.      Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and
    e.      Improving Summit Academy's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.
    f.      Failing to exercise reasonable care with respect to Plaintiffs' placement at Summit Academy;

g.    Failure to have adequate screening and policies to ensure proper placement of adjudicated youth, like Plaintiffs;

h.    Permitting and/or otherwise causing Plaintiffs to be exposed to Summit Academy managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School with known history of sexually assault complaints;

i.    Permitting and/or otherwise causing Plaintiffs to be exposed to sexual assault;

j.    Failing to train and supervise their employees and agents which allowed for the improper placement of Plaintiffs at Summit Academy;

k.    Failure to enforce codes, regulations and policies with respect to removal of foster children from a foster home;

l.    Failure to have adequate policies to ensure that adjudicated youth are timely removed from a harmful environment;

m.    Failure to enforce adequate screening and policies to ensure safe and suitable placement of adjudicated youth, like the Plaintiffs; and,

n.    Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Plaintiffs' rights that shall be revealed through discovery prior to trial.

193.    Summit Academy's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

194.    By its acts and omissions, Summit Academy was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Summit Academy.

195.    As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Summit Academy's programs.

196.    Because Summit Academy did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant's actions and/or inactions.

197.    The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objectively offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Summit Academy.

198.    In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

199.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

    **WHEREFORE**, Plaintiffs, demand judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 3 (All Plaintiffs v. Summit Academy)**
**Violations of Title 42 (42 U.S.C. § 1983 et seq.)**
**Civil Rights Deprivation**

200.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

201.    While obtaining an education and otherwise residing at the Defendant Summit Academy's facility Plaintiffs had a right to have their civil rights protected and safeguarded.

202.    The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution protect Plaintiffs  from physical and sexual abuse and unreasonable uses of force from Defendants. These Amendments also require Defendant Summit Academy to establish policies and practices to protect Plaintiffs  from known harms and known patterns of constitutional deprivations.

203.    The School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

204.    The School failed, with deliberate indifference, to provide a safe custodial setting for Plaintiffs  , by failing to properly train, supervise, and discipline the staff at the School, including all John Does. As a proximate result of the School's policies, practices, and customs, the Defendants, and the John Doe Defendants subjected and/or allowed to be subjected, Plaintiffs  to physical and/or sexual abuse.

    **WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 4 (All Plaintiffs v. Summit Academy)
### Deprivation of Rights Pursuant to The Civil Rights Act Of 1871, 42 U.S.C. § 1983
### By Virtue of State Created Danger

205.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

206.    This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendants that resulted in the injuries suffered by Plaintiffs.

207.    At all times relevant hereto, Defendant Summit Academy was a "persons" pursuant to 42 U.S.C. § 1983 by providing residential placement and oversight services either directly, by delegated authority, or via contractual authority.

32

208.    Defendants' constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, *et seq.* or 42 Pa.C.S. § 8521, *et seq.*

209.    The specific harms to which Defendants exposed Plaintiffs were foreseeable and direct in that they were aware of prior sexual abuse, harassment, and assault of youth at Summit Academy, dating back for decades.

210.    At all times material hereto, Defendants Summit Academy were bound by various Pennsylvania statutes as well, upon information and belief, its own policies, rules and regulations for the management and oversight of adjudicated youth and their placement into a residential facility.

211.    In direct contravention and violation of those Pennsylvania statutes as set forth above (55 Pa. Code §§ 3130 *et seq.* and 3700 *et seq.*) and, upon information and belief, in violation of Defendant Summit Academy's own rules, regulations and policies, and recklessly, willfully and with deliberate indifference placed Plaintiffs at Summit Academy.

212.    At all times relevant hereto, Defendants Summit Academy were acting "under color of state law" for purposes of 42 U.S.C. § 1983 by providing residential placement, oversight and/or rehabilitative services to Plaintiffs as set forth above.

213.    Defendants Summit Academy, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to Plaintiffs' rights, violated 42 U.S.C. § 1983 and deprived Plaintiffs of their rights as guaranteed under the Fourth and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that these Defendants, without lawful basis, caused the aforementioned injuries and damages to

Plaintiffs, by creating the danger to which Plaintiffs were exposed, in violation of their aforesaid guaranteed rights as follows upon information and belief:

     a.     Failing to adhere to accepted standards for good and reasonable placement;

     b.     Failure to have adequate screening and policies to ensure proper placement of adjudicated youth in residential placements, like the Plaintiffs;

     c.     Permitting and/or otherwise causing the Plaintiffs to be exposed to managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children at the School,

     d.     Permitting and/or otherwise causing the Plaintiffs to be exposed to sexual assault;

     e.     Failing to train and supervise their employees and agents which allowed for the negligent placement of Plaintiffs;

     f.     Failure to enforce adequate screening and policies to ensure safe and suitable placement of adjudicated youth in residential placements, like the Plaintiffs;

     g.     Such other deliberately indifferent, reckless, and willful and wonton conduct resulting in the violation of Plaintiffs' rights that shall be revealed through discovery prior to trial.

214.    The danger created by Defendants as aforesaid was foreseeable and fairly direct.

215.    Defendants' willful placement of court-adjudicated youth at Summit Academy managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children at the School.

216.    In creating the danger as set forth above, Defendants acted in willful disregard for the safety of Plaintiffs.

217.    A relationship existed between Plaintiffs and the Defendants as set forth above, such that Plaintiffs were foreseeable victims of the Defendants' actions and/or inactions as described above.

218.    In creating the danger as set forth above, Defendant Summit Academy, by virtue of their authority, placed Plaintiffs in a dangerous position that was foreseeable.

219.    Defendant Summit Academy, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless

indifference violated 42 U.S.C. § 1983 and deprived Plaintiffs of their rights as guaranteed under the Fourth, and/or Fourteenth Amendments to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing injuries and damages to Plaintiffs, as aforesaid.

220.    By reason of the aforesaid actions and inactions of the Defendant Summit Academy, and as a direct and proximate result thereof, Plaintiffs suffered forcible sexual assault, and now suffers from permanent psychological injuries and special damages. Plaintiffs also sustained injuries and damages as a result of the described incident.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 5 (Plaintiff Quann v. Juvenile Probation)
### Violations of Title IX 20 U.S.C. § 1681(A) et seq.
### Deliberate Indifference to Prior Sexual Harassment

221.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

222.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

223.    Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides:"… A recipient shall adopt and publish grievance procedures providing for prompt and

equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

224.    Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

225.    Summit Academy regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq.

226.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

227.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

228.    Title IX covers all programs of a school that receives any federal financial assistance and covers sexual harassment-including sexual assault-by school employees, students, and third parties.

229.    Title IX requires Defendant Juvenile Probation to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

230.    Before Plaintiffs were abused while at Summit Academy, Defendant Juvenile Probation knew or should have known of prior sexual abuse, harassment, and assault of youth at Summit Academy, dating back for decades.

231.    Based on these prior repeated incidents of sexual abuse and assault, Defendant Juvenile Probation knew or should have known of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Summit Academy.

232.    With this knowledge, Defendant Juvenile Probation had the authority to address the pervasive risk of sexual abuse in Summit Academy's programs, and had the authority to take corrective measures, including by:

  a.    Removing youth from placement at Summit Academy;
  b.    Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;
  c.    Thoroughly investigating staff members with known complaints of prior sexual abuse and harassment of youth;

233.    Defendant Juvenile Probation's failure to address the substantial risk of sexual abuse in Summit Academy's programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

234.    By its acts and omissions, Defendant Juvenile Probation was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Summit Academy.

235.    As a result of Defendant Juvenile Probation's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Summit Academy's programs.

236.    Because Juvenile Probation did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs'

damages were the direct and proximate result of Defendant Juvenile Probation's actions and/or inactions.

237.    The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Summit Academy.

238.    In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant Juvenile Probation, in a sum to be shown according to proof.

239.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

   **WHEREFORE**, Plaintiffs, demand judgment against Defendant Juvenile Probation, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 6 (Plaintiff Bailey v. Juvenile Probation)
### Violations of Title IX 20 U.S.C. § 1681(A) et seq.
### Deliberate Indifference to Prior Sexual Harassment

240.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

241.    Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

242.    Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides:"… A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

243.    Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

244.    Summit Academy regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq.

245.    As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

246.    Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

247.    Title IX covers all programs of a school that receives any federal financial assistance and covers sexual harassment-including sexual assault-by school employees, students, and third parties.

248.    Title IX requires Defendant Juvenile Probation to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

249.    Before Plaintiffs were abused while at Summit Academy, Defendant Juvenile Probation knew or should have known of prior sexual abuse, harassment, and assault of youth at Summit Academy, dating back for decades.

250.    Based on these prior repeated incidents of sexual abuse and assault, Defendant Juvenile Probation knew or should have known of the substantial risk that Plaintiffs would be sexually harassed, abused, or assaulted at Summit Academy.

251.    With this knowledge, Defendant Juvenile Probation had the authority to address the pervasive risk of sexual abuse in Summit Academy's programs, and had the authority to take corrective measures, including by:

   a.   Removing youth from placement at Summit Academy;
   b.     Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;
   c.     Thoroughly investigating staff members with known complaints of prior sexual abuse and harassment of youth;

252.    Defendant Juvenile Probation's failure to address the substantial risk of sexual abuse in Summit Academy's programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

253.    By its acts and omissions, Defendant Juvenile Probation was deliberately indifferent to the substantial risk that Plaintiffs would be sexually harassed, abused, and/or assaulted while at Summit Academy.

254.    As a result of Defendant Juvenile Probation's deliberate indifference to this pervasive culture of sexual harassment, Plaintiffs were subjected to severe sexual abuse as children in Summit Academy's programs.

255.    Because Juvenile Probation did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Summit Academy, instead allowing this conduct to prevail, Plaintiffs suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiffs' damages were the direct and proximate result of Defendant Juvenile Probation's actions and/or inactions.

256.    The sexual harassment suffered by Plaintiffs was so severe, pervasive, and objective offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Summit Academy.

257.    In subjecting Plaintiffs to this wrongful treatment as described, and through its violations of Title IX, Summit Academy in its efforts to avoid bad publicity and maintain its public image acted willfully and maliciously with the intent to harm Plaintiffs, and in conscious disregard of Plaintiffs' rights, so as to constitute malice and oppression. Plaintiffs are therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant Juvenile Probation, in a sum to be shown according to proof.

258.    Furthermore, Plaintiffs request the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

    **WHEREFORE**, Plaintiffs, demand judgment against Defendant Juvenile Probation, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars

($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### PENNSYLVANIA STATE LAW CLAIMS
### COUNT 7 (All Plaintiffs v. Summit Academy)
### Negligence

259.   Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

260.   Defendant Summit Academy had a duty to act reasonably and to maintain a safe environment for Plaintiffs   while within Defendant Summit Academy's care.

261.   Summit Academy acted with a lack of care towards Plaintiffs through its acts and omissions, including: allowing and authorizing a culture of abuse at Summit Academy facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Summit Academy programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Summit Academy facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiffs' wellbeing while in Summit Academy programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Summit Academy programs; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Summit Academy programs.

262.   Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and

amplifies the trauma of the actual abuse due to institutional betrayal.

263.    By failing to exercise ordinary care through their acts and omissions, Summit Academy caused harm to Plaintiffs.

264.    Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiffs.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 8 (All Plaintiffs v. Summit Academy)
### Negligent Hiring

265.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

266.    Summit Academy is required to make an appropriate investigation of all employees staffed at their facilities. This duty requires that potential applicants are thoroughly and appropriately screened to ensure that they will provide safe care for the vulnerable children in Defendant's programs.

267.    Summit Academy knew or should have known that the employment of the staff members who abused Plaintiffs posed a risk or hazard to the youth in their treatment programs. With a thorough background check and investigation of applicants' prior work history, personal and professional references, and potential "red flags", Summit Academy would have known that these employees were not suitable for the particular duty of caring for children.

268.    It was unreasonable for Summit Academy to hire employees whom Summit Academy should have known, based on reasonable pre-hiring screening, were unsuitable to work in a

behavioral health center for children and adolescents with cognitive differences and advanced mental health needs.

269.    As detailed above, Plaintiffs were harmed by various Summit Academy staff members. These harms include: physical abuse, sexual assault, and withholding meals.

270.    Because of Summit Academy's negligent hiring practices, Plaintiffs were proximately harmed by these employees. Had Summit Academy shown due care in the screening of its employees, Summit Academy staff members would not have been given the access and opportunity to physically, sexually, and emotionally abuse Plaintiffs.

    **WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually,jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 9 (All Plaintiffs v. Summit Academy)
### Negligent Retention

271.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

272.    Summit Academy became aware or reasonably should have become aware that its employees were engaged in acts of physical, sexual, and/or emotional abuse of Summit Academy patients and residents, and yet failed to investigate, discharge, or reassign these employees.

273.    Summit Academy reasonably should have known that its staff physically and sexually abused Plaintiffs while in their care. With reasonable supervision, protocols, and checkpoints in place, Summit Academy should have been aware of these egregious acts. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective

action.

274.   Summit Academy reasonably should have known that Summit Academy staff verbally and physically abused Plaintiffs. Plaintiffs even reported this abuse to Summit Academy, putting them on actual notice of their employee's bad acts. Summit Academy also should have known staffers routinely watched and groomed Plaintiffs for sexual abuse. With reasonable supervision and protocols in place, Summit Academy should have known about each of these incidents. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

275.   Summit Academy reasonably should have known that Summit Academy staff abused Plaintiffs via withholding food from them as punishment. Had Summit Academy adequately supervised its employees, Summit Academy reasonably would have known about these incidents. Despite the fact that Summit Academy reasonably should have known about this abuse, it allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

276.   Summit Academy reasonably should have known that a Summit Academy staff members named herein this Complaint sexually abused Plaintiffs on the Defendant's property. Had Summit Academy adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Summit Academy reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

277.   Summit Academy reasonably should have known that multiple male Summit Academy staffers were physically abusing Plaintiffs. Had Summit Academy adequately and appropriately

supervised and exercised control over its staff, Summit Academy would have been aware of the abuse that occurred to Plaintiffs. Despite the fact that Defendant reasonably should have known about this abuse, Defendant allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

278.   Summit Academy reasonably should have known, and did in fact know, Plaintiffs were abused by Summit Academy staff members when multiple Plaintiffs showed physical signs of abuse, including marks on their bodies and an extremely swollen arms, legs, and wrists. Despite Summit Academy's knowledge via repeated reports about staff members named herein this Complaint and others employed by them yet did not independently investigate, transfer, or fire this employee, instead allowing the abuse of Plaintiffs to happen time and time again.

279.   Defendant reasonably should have known of the abuse of each Plaintiff, yet negligently retained the employees responsible for the abuse. Because of Defendant's breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, each Plaintiff was grievously banned.

   **WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 10 (All Plaintiffs v. Summit Academy)
### Negligent Supervision

280.   Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

281.   Defendant, Summit Academy, knew or should have known of the need to properly and effectively observe, manage, direct, oversee, and/or supervise staff, teachers, counselors,

employees, agents, servants, representatives, and/or ostensible agents in their relationships with young children.

282.    Defendant, Summit Academy, knew or should have known of the particular risk posed by the staff members named within the Complaint and others based on, among other things, their inappropriate and/or questionable conduct, their history of sexually, physically, and/or emotionally abusing children, and/or their behavior indicative of an intent to isolate, groom, and/or facilitate sexually contacting and/or abusing a young minor child, including the abuse by the staff members named within the Complaint and others and/or other staff members of Plaintiffs.

283.    The staff members named within the Complaint and others and/or other staff members' sexual abuse of Plaintiff gradually increased in frequency and intensity over time.

284.    The negligence, carelessness, and/or recklessness of Defendant, Summit Academy, for the conduct of their actual or apparent staff, teacher, counselors, employees, agents, servants, representatives, and/or ostensible agents, in the hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members consists of one or more of the following:

a.  Negligent hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of staff and/or teachers and/or counselors in the employ of Summit Academy and/or Defendant;
b.  Failing to use due care in hiring, certifying, assigning, observation, retaining, supervision, management, oversight, direction, administration, and/or otherwise control of the staff members named within the Complaint and/or other staff members and the relationship of the staff members named within the Complaint and others and/or other staff members with Plaintiffs; and,
c.  Failing to investigate and supervise the staff members named within the Complaint and/or other staff members and their relationship with Plaintiffs.
d.

   **WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 11 (All Plaintiffs v. Summit Academy)
### Gross Negligence

284.   Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

285.   Summit Academy owed Plaintiffs a duty to provide a safe environment with adequate protection, supervision, and care while in their custody.

286.   Summit Academy acted with a lack of care towards Plaintiffs by demonstrating a conscious disregard or indifference towards their safety and wellbeing and significantly departing from how a reasonably careful person would act under the circumstances.

287.   At all relevant times, Summit Academy owed a duty to Plaintiffs to implement practices and policies to:

    a.   Prevent sexual, emotional, and physical abuse of youth by Summit Academy staff;

    b.   Prohibit and prevent romantic or sexual relationships between youth and Summit Academy staff;

    a.   Prohibit grooming and other sexually exploitative behavior by Summit Academy staff;

    b.   Require the prompt reporting of any allegations or suspicions of sexual, physical or emotional abuse of youth in Summit Academy programs by staff or by peers;

    c.   Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in Summit Academy programs;

    d.   Mandate the training of all staff who work directly with youth in Summit Academy programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

    e.   Protect Plaintiffs and from such abuse and foreseeable risks; and

    f.   Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

288.   Defendant's duty arose from taking responsibility for the care and custody of youth

attending their programs.

289.     Summit Academy acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Summit Academy for treatment, growth, and education, including Plaintiffs.

290.     Summit Academy knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who work closely with children and young adults suffering with advanced mental health needs, intellectual and developmental disabilities, and low IQs, Summit Academy created an unreasonable risk of harm to Plaintiffs so great that it was highly probably that the harm would result.

291.     As one of the nation's largest behavioral healthcare organizations, Summit Academy is or should be acutely aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Summit Academy thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of this power differential for improper purposes.

292.     The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden and children may have limited access to police, advocates, or social services representatives who can intervene.

293.     By recklessly failing to keep these children safe while in its care and custody, Summit

Academy exhibited a willful disregard for necessary precautions to reasonably protect Plaintiffs.

294.    As a direct and proximate result of Defendant's reckless indifference to Plaintiffs, Plaintiffs have suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation and loss of enjoyment of life. Plaintiffs were prevented and will continue to be prevented from performing their activities of daily living due to the gross negligence of Summit Academy.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT  12 (All Plaintiffs v. Summit Academy)
### Negligent Misrepresentations and Omissions

295.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

296.    In the course of their business, Defendant presents itself as maintaining a gold standard in the field of behavioral health treatment for troubled youth. Summit Academy's website describes its "core values" of compassion, knowledge, collaboration, dedication, learning and progress. Summit Academy details its commitment to serving the community, and its use of a philosophy of care which "integrates the latest scientific and medical advancements with time-tested philosophies and compassionate family engagement to provide practical, effective and efficient care, making a meaningful difference in the lives of those we serve, and the world around them."

297.    Defendant's website also describes its "commitment to safety and security," detailing the organization's recent formalization of its safety and security protocols through an evolved culture

of Servant Leadership and a dedicated commitment to operational, clinical and risk management best practices. Through its advertising, Summit Academy represented to Plaintiffs and their families that adequate practices and protocols were in place at their facilities to ensure the safety of children placed in their care to receive treatment. What Summit Academy failed to mention in their advertising, however, is the repeated pattern of sexual abuse and exploitation of young people who enter their programs.

298.    Summit Academy's website and advertising misrepresents material facts regarding the quality of its programs, as Summit Academy fails to demonstrate an actual commitment to safety or security for its patients, students and residents. Thus, Defendant's representations were not true, as Summit Academy negligently supervised and managed their facilities in such a way that children routinely suffered sexual, physical, and emotional abuse while under their watch.

299.    Plaintiffs and their family members relied on Defendant's representations about the quality of their programs in choosing to enroll in treatment at Summit Academy.

300.    Summit Academy knew or should have known that the representations about the quality of their programs - especially the safety and security of their patients, students and residents - would be relied upon by those individuals and their families.

301.    Plaintiffs were harmed because of Summit Academy's negligent misrepresentations about the safety and security of their programs. Plaintiff parents and guardians reasonably relied on Summit Academy's representations of safety and security, and were thereby harmed when they unknowingly placed their children in Summit Academy's custody.

    **WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages,

and such other legal and equitable relief as the Court deems appropriate.

**COUNT 13 (All Plaintiffs v. Summit Academy)**
**Vicarious Liability**

302.   Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

303.   When each Plaintiff was sexually, physically, and/or emotionally abused by Summit Academy staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Summit Academy patients.

304.   Summit Academy is vicariously liable under the doctrine of respondeat superior for the tortious conduct committed by their staff members during their staffs treatment of children at Summit Academy.

305.   Summit Academy staff members' sexual, physical, and/or emotional abuse of Plaintiffs constitutes an assault or battery, as detailed further below.

306.   Summit Academy ratified their staff members' abusive conduct towards Plaintiffs by failing to discipline, take corrective action, and/or report the child abuse. For decades, Summit Academy has sanctioned this culture of abusive behavior by their staff, as described above.

307.   These tortious acts were also foreseeable, as Summit Academy was aware of repeated incidents of sexual, physical, and emotional abuse of Summit Academy patients within their facilities. Summit Academy knew that their patients, including Plaintiffs, were particularly susceptible to abuse as youth with disabilities and critical mental health needs. Summit Academy knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that their staff would continue to abuse vulnerable children in their treatment programs, including Plaintiffs.

308.   As a direct and proximate result of Summit Academy's employees' abuse towards

Plaintiffs, Plaintiffs have suffered physical harms and have suffered and will continue to suffer emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 14 (All Plaintiffs v. Summit Academy)
### Negligent Infliction of Emotional Distress

309.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

310.    Pursuant to Pennsylvania law, Summit Academy's negligent acts and omissions constitute the negligent infliction of emotional distress, as: 1) Summit Academy acted negligently, as described above; 2) Summit Academy's negligence placed Plaintiffs in the zone of danger of physical impact or injury, as each plaintiff was physically abused by Summit Academy staff; and 3) Plaintiffs suffered emotional distress as a result of Summit Academy's negligent conduct. Pa. SSJI (Civ) § 13.40;

311.    Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

312.    Plaintiffs   suffered physical injury as a result of Defendants' conduct.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00}, exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages,

and such other legal and equitable relief as the Court deems appropriate.

**COUNT 15 (All Plaintiffs v. Summit Academy)  - Intentional Infliction of Emotional Distress**

313.    Plaintiffs allege and incorporate via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

314.    Defendant's conduct is extreme and outrageous.

315.    Summit Academy's actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Summit Academy acted with reckless disregard for the probability that Plaintiffs would suffer emotional distress as a result. Pa. SSJI (Civ) § 17.40;

316.    Summit Academy's conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiffs. This distress was of such an intensity that no reasonable person should be expected to endure it.

317.    Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

318.    By permitting a culture of systematic physical, emotional, and sexual abuse at Summit Academy facilities, Summit Academy caused Plaintiffs to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiffs will continue to suffer from these enduring harms, and have incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

**WHEREFORE,** Plaintiffs, demand judgment against Defendant, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 16 (Quann v Summit Academy) - Assault and Battery

319.   Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

320.   While residing at Summit Academy as a minor, Defendant's staff members punished Plaintiff Quann by using excessive force in restraining him causing him extreme injury.

321.   Plaintiff did not and could not consent to these grievous harms and abuses.

322.   These intentional acts of bodily harm acts with a minor constitute assault and battery by Summit Academy.

**WHEREFORE**, Plaintiffs, demand judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### JURY TRIAL DEMAND

323.   Plaintiffs alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

324.   Plaintiffs demand a jury on all claims triable as a matter of right.

Respectfully submitted,

**VAN DERVEEN, HARTSHORN, LEVIN & LINDHEIM**

/s/ *Michael T. van der Veen*
Michael T. van der Veen, Esquire
Jerry A. Lindheim, Esquire

**CORNERSTONE LEGAL GROUP, LLC**

*/s/ David Wesley Cornish*
David Wesley Cornish, Esquire
*Attorneys for Plaintiffs*
Date: August 30, 2024

| | | |
|---|---|---|
| Ronnie Quann, Devon Batista, William | : | **United States District Court** |
| May Jr., Sharief Clayton, Robert Borders, | : | **Western District of Pennsylvania** |
| Kyle Mikell-Givens, & Saheed Bailey, | : | |
| (Plaintiffs), | : | |
| v. | : | |
| The Summit School Inc, t/d/b/a The Academy | : | **Civil Division -** |
| Schools, t/d/b/a The Summit Academy, | : | |
| Philadelphia County Juvenile Probation | : | **JURY DEMAND** |
| Department, and John/Jane Does 1-100, | : | |
| (Defendants). | : | **2:24-cv-01143** |

<u>VERIFICATION</u>

The facts set forth in the foregoing Amended Complaint are true and correct to the best of the undersigned's knowledge, information, and belief and are verified subject to the penalties for perjury and unsworn falsification to authorities and/or the tribunal under both state and United States law.

Respectfully Submitted,

**VAN DERVEEN, HARTSHORN, LEVIN & LINDHEIM**

/s/ *Michael T. van der Veen*
Michael T. van der Veen, Esquire
Jerry A. Lindheim, Esquire

**CORNERSTONE LEGAL GROUP, LLC**

/s/ *David Wesley Cornish*
David Wesley Cornish, Esquire
*Attorneys for Plaintiffs*
Date: August 30, 2024