**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Ronnie Vincent Quann, | : | **United States District Court** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| **The Summit School Inc, t/d/b/a The Academy** | : | **Civil Division** |
| **Schools, t/d/b/a The Summit Academy,** | : | |
| **Philadelphia County Juvenile Probation** | : | **2:24-cv-01143** |
| **Department, and John/Jane Does 1-100,** | : | **JURY DEMANDED** |
| **Defendants.** | : | |

**THIRD AMENDED COMPLAINT**

Plaintiff, Ronnie Vincent Quann  alleges as follows, against Defendant The Summit School, Inc. ("Summit Academy" or "School"), Philadelphia County Juvenile Probation Department ("Juvenile Probation"), and John/Jane Does #1-100 ("John/Jane Doe Defendants"), in their official and individual capacities:

**INTRODUCTION**

1.      The School operates facilities where juveniles are held in custody in Pennsylvania.

2.      Juvenile Probation has a statutory duty to supervise and assist a child placed on probation or in his protective supervision or care by order of the court or other authority of law.[1]

3.      As such, Defendant Philadelphia County Juvenile Probation Department explicitly, if not implicitly, had an ongoing duty to ensure the well-being and safety of the individuals, specifically Plaintiff.

4.      It is believed, and therefore averred, that Defendant Philadelphia County Juvenile Probation Department worked in consort and/or in conjunction with the other defendants herein to supervise, educate, train, monitor, and/or otherwise oversee and maintain the well-being and safety of individuals, including Plaintiff.

---

[1] 42 Pa. Stat. and Cons. Stat. Ann. § 6304.

1

5.      The School, by contract and legislation in Pennsylvania, and all the states it operates, has been delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; and (b) to carry out legislatively mandated control and related services, and to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

6.      The Academy Schools offers rehabilitation, education and support services for youth through a trauma- informed approach. Established in Western Pennsylvania and managed by leaders and innovators in the field of juvenile justice, The Academy Schools are both community-based and residential, serving both local and out-of-state students. Available at www.facebook.com/theacademyschools/about/

7.      Instead of fulfilling their promise and solemn responsibility to protect these vulnerable youth, the youth, including the Plaintiff herein, were exposed to predators and abusers. Summit Academy failed to enact safety measures and other policies to protect the children, failed to adequately screen, hire, train, and supervise staff, and failed to fulfill its duties under state and federal law, and as a result of the Defendant's misconduct, children in Summit Academy facilities have been reportedly sexually abused - often by Summit Academy staff.

8.      Thus, the School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

9.      The school was acting as an arm of the states and Commonwealth, where it operates, acts under the color of law for 42 U.S.C. § 1983 liability purposes.

10.     In Pennsylvania the Juvenile Court Judges Commission adopted the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system in Pennsylvania) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."

11.     The School also professes to employ a "Balanced and Restorative Justice {BARJ) compliant, residential program utilizing a Sociological Model, designed to effectuate long-term behavioral change and enhance life skills development."

12.     The School program includes room and board, clothing, behavior management individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." Available at https://theacademyschools.com/the-summit-academy/

13.     The School offers services for court-adjudicated youth and non-delinquent youth. Available at https://theacademyschools.com/the-summit-academy/

14.     As more fully detailed hereinafter, it is believed Defendant Juvenile Probation failed and/or ignored its statutory and other duties to individuals, including all to their great harm and detriment, which was outrageous.

15.     Defendant Juvenile Probation, at all times relevant hereto, was responsible for placement of post-adjudicated youth in residential programs, including, at the time, the Plaintiff.

16.     Defendant Juvenile Probation, at all times relevant hereto, acted as the equivalent of a placement agency in placing Plaintiff at The Summit Academy post-adjudication.

17.     At all times relevant hereto, Defendant Juvenile Probation had a duty to and was required to protect the best interests of the children they were responsible for placing at facilities, including

3

The Summit Academy.

18.     At all times relevant hereto, Defendant Juvenile Probation had a duty to screen and investigate the employees of The Summit Academy into whose care Defendant, Philadelphia Juvenile Detention Center, placed children including the Plaintiff.

19.     At all times relevant hereto, Defendant Juvenile Probation had a duty to screen, gather information, and investigate those responsible for working with children at The Summit Academy for signs of possible abuse or neglect.

20.     Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiff under the Eighth, and Fourteenth Amendments, and committed tortious conduct under state law, by subjecting Plaintiff to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect him from harm and injuries at the hands of others.

21.     Defendants violated Plaintiff's state and federal Constitutional equal rights to educational opportunities.

22.     The School caused the injuries and harm to Plaintiff by failing to properly train, supervise, and discipline the John/Jane Doe Defendants and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

23.     Further, the School and Probation Departments failed to protect Plaintiff from assaults and abuse by staff and fellow students at the School.

24.     It is believed and therefore averred that Plaintiff reported the sexual abuse and harassment to individuals at Summit Academy who were in positions of authority and had the ability to take

corrective action, including but not limited to supervisors, counselors, and other staff members at the facility.

25.     Despite Plaintiff's disclosures, these individuals either turned a blind eye to the abuse or engaged in additional sexual abuse of Plaintiff, thereby compounding the harm and further subjecting Plaintiff to a hostile and abusive environment.

26.     It is further believed and therefore averred that the agents, supervisors, and counselors of Defendant created an environment of fear, intimidation, and coercion that discouraged and effectively prevented Plaintiff from reporting the abuse beyond the supervisors and staff within the facility. This environment included but was not limited to, threats of retaliation, isolation, and further mistreatment if Plaintiff attempted to report the abuse to authorities outside of the facility.

27.     The individuals to whom the abuse was reported were appropriate persons under Title IX, as they had the authority to address the discrimination and take corrective measures on behalf of the Defendants. However, these individuals, acting as agents of the Defendant, failed to take any reasonable steps to protect Plaintiff from further abuse or to investigate the reports of misconduct.

28.     The School itself and by and through its staff members, individually and collectively, deprived the Plaintiff of his constitutionally guaranteed right to an education and equal educational opportunities.

29.     The School has failed to properly protect Plaintiff, and has shown a reckless disregard and deliberate indifference to the widespread violations of his rights, despite being aware for decades of the conduct of the John Doe Defendants, including the physical assaults and sexual abuse, and the corresponding lack of protection for Plaintiff and the children residing at the School.

30. Plaintiff, Ronnie Vincent Quann, brings this lawsuit to hold Summit Academy accountable for the harm it caused and to prevent this devastating abuse from happening to any other child in Summit Academy's care.

## JURISDICTION AND VENUE

31. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question), because Plaintiff alleges actions arising under the laws of the United States, including 20 U.S.C. § 1681 and 34 U.S.C. § 2034, in addition to 28 U.S.C. § 1343, and the Civil Rights Act of 1871, 42 U.S.C. §§1983, 1985, and 1988.

32. At all relevant times, all Defendants acted under the color of state law.

33. This Court has supplemental jurisdiction for the state law claims, pursuant to 28 U.S.C. §1367.

34. Venue is proper in this district pursuant to 28 U.S.C. §139l(b) in that a substantial part of the events and/or omissions giving rise to the claim occurred in this district.

## PARTIES

35. Plaintiff is **Ronnie Vincent Quann,** an individual and resident of the United States of America, and the Commonwealth of Pennsylvania.

36. Defendant, **Summit Academy** is a registered business with a corporate headquarters office at 839 Herman Road Herman, PA 16039.

37. Defendant, **Philadelphia County Juvenile Probation Department** is a governmental agency with its office at 1501 Arch Street, Philadelphia, PA 19102.

38. Defendants John/Jane Does 1-100 are current and former managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children, including

6

Plaintiff, at the School.

## FACTUAL BACKGROUND

**A. Defendants Had a Duty To Provide a Safe And Secure Facility for Juveniles and Provide Education Opportunities Committed of Otherwise Housed at The School Pursuant to Constitutional and State Law Mandates.**

59.    At all times the Defendant and all its staff members, workers, employees, servants, voluntary, and the like were mandatory reporters pursuant to Pennsylvania law and were required to report any suspected child abuse pursuant to *55* Pa.C.S.A. §3680 *et seq:* *55* Pa.C.S.A. §3800 *et seq:* 42 Pa.C.S.A. §§ 6327(a) *et seq.;* and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendant's facility.

60.    Defendant Summit Academy accepted juveniles for placement pursuant to court orders issued from various county and state governmental units.

61.    The School serves as a custodial facility for the placement of juvenile court-adjudicated youths, aged 11-18, and other at-risk youth. Founded in 1982, the School has provided juvenile residential care since its inception. It claims to assess the unique needs of each student, teach tools for success and offer meaningful opportunities for personal growth.

62.    Children with a wide range of backgrounds, abilities, and diagnoses receive treatment from Summit Academy programs. Summit Academy offers many clinical, therapeutic, educational and employment programs for children with special needs and their families. Some youth and families receive less- intensive services from Summit Academy such as outpatient behavioral health therapy, family-based mental health services, and various types of consultation-based support. Other non-residential programs include day schools for youth with intellectual/developmental disabilities and autism spectrum disorders. Summit Academy's more intensive residential programs include therapeutic boarding schools,

therapeutic group homes, supervised independent living facilities, an intensive residential treatment program for children who have experienced sexual exploitation, and psychiatric specialty hospitals.

63.    At all relevant times, Plaintiff was a minor placed in the care and custody of Summit Academy, where staff exercised authority and control over his daily activities, movement, and progression through the program.

64.    During his placement, Plaintiff was subjected to ongoing abuse by a staff member who had direct supervisory authority over him. Robert Hughes used that authority to intimidate Plaintiff and expressly threatened that if Plaintiff disclosed the abuse, he would suffer adverse consequences, including remaining in placement for a longer period of time. Given the custodial nature of the setting and Plaintiff's dependence on staff for basic needs and release-related decisions, Plaintiff reasonably feared retaliation and was deterred from reporting the abuse.

65.    The environment in which Plaintiff was housed limited meaningful access to outside communication, including restrictions on phone calls and contact with individuals outside the facility. These restrictions reduced Plaintiff's ability to seek help from independent third parties and contributed to the concealment of abuse.

66.    Defendant failed to provide a safe, reliable, and confidential mechanism for residents to report abuse without fear of retaliation. In practice, reports of misconduct were ignored, dismissed, or resulted in negative consequences for residents, further discouraging disclosure and allowing abuse to continue undetected.

67.    Notwithstanding Plaintiff's inability to safely report the abuse, Defendant knew or, in the exercise of reasonable care, should have known that residents in its custody faced a substantial risk of abuse by staff. Plaintiff exhibited observable indicators of abuse, including physical injuries,

behavioral changes, emotional distress, or other outward manifestations, which were visible to and/or should have been observed by staff responsible for supervision and care. These indicators, combined with Defendant's obligation to monitor staff-resident interactions, should have prompted investigation and intervention.

68.     Moreover, upon information and belief, prior incidents of sexual misconduct involving staff and other individuals entrusted with the care of residents had occurred at Defendant's facility, including incidents resulting in criminal investigation and prosecution. These incidents demonstrate that Defendant was aware, or should have been aware, of the risk that individuals in positions of authority within its facility could exploit and abuse residents.

69.     Despite this knowledge, Defendant failed to implement and enforce adequate safeguards designed to detect and prevent abuse in circumstances where residents could not safely report misconduct, including independent reporting mechanisms, meaningful supervision, monitoring of staff-resident interactions, and timely investigation of warning signs.

70.     Defendant's policies and practices, including limitations on external communication, failure to provide confidential reporting avenues, and failure to act on observable indicators of abuse, created a foreseeable and unreasonable risk that staff would exploit their authority, suppress disclosure, and engage in abuse without detection.

71.     As a result of these failures, the abuse of Plaintiff was permitted to continue over an extended period of time without intervention.

72.     The School is funded in large part by the Commonwealth of Pennsylvania and other government jurisdictions and agencies, both inside and outside Pennsylvania, to provide services mandated by law for children who have been adjudicated as delinquent in juvenile court.

73. The School asserts it provides a rehabilitative program, as opposed to a punishment-based program, for juvenile offenders and delinquent youth, including Plaintiff. The School further states that it provides evidence-based programs such as "Positive Behavioral Intervention Supports, Moral Recognition and Coping with Anger" to turn its students away from crime.

74. The School has been the recipient of placements and commitments of juveniles from Pennsylvania and other states by virtue of its promise of a progressive and effective program for delinquent children, with proven services. The School has assiduously sought recognition as a model reform school, and has achieved that status, at least for some, as "the Harvard of reform schools." For example, Florida, Texas, Ohio, Colorado, Illinois, and many Pennsylvania counties placed juveniles at the School.

75. Defendants have the duty to provide treatment, supervision, and rehabilitation in accordance with federal and state Constitutional standards, via the Pennsylvania Juvenile Act, and prevailing standards for the care and custody of juveniles in need of treatment and supervision. As detailed in *this* Complaint, Defendants have failed to provide these services in accord with Constitutional, statutory and community standards of care.

76. At all relevant times, Plaintiff Ronnie Vincent Quann was adjudicated delinquent and placed under the supervision and care of Defendant Philadelphia Juvenile Probation Department pursuant to the Pennsylvania Juvenile Act, 42 Pa. Stat. and Cons. Stat. Ann. § 6301 et seq.

77. Defendant Philadelphia Juvenile Probation Department placed Plaintiff at Summit Academy, a juvenile facility that receives federal financial assistance and is therefore subject to the requirements of Title IX.

78.    Title IX mandates that no person, on the basis of sex, shall be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance.

79.    While residing at Summit Academy, Plaintiff was subjected to severe physical, emotional, and psychological abuse, including but not limited to, abuse that was discriminatory on the basis of sex as detailed below.

80.    The conditions at Summit Academy created a hostile and abusive environment for Plaintiff, which interfered with his access to the educational and rehabilitative services provided by the facility.

81.    Defendant Philadelphia Juvenile Probation Department had actual or constructive knowledge of the sex-based discrimination and hostile environment at Summit Academy but failed to take any corrective actions to address the discrimination or protect Plaintiff from further harm.

82.    Despite its obligations under Title IX, Defendant Philadelphia Juvenile Probation Department was deliberately indifferent to the discrimination and failed to ensure that Plaintiff was placed in a safe, non-discriminatory environment where he could benefit from the educational and rehabilitative services offered by Summit Academy.

83.    As a direct and proximate result of Defendant's deliberate indifference and failure to fulfill its obligations under Title IX, Plaintiff Ronnie Vincent Quann suffered substantial harm, including physical injuries, emotional distress, mental anguish, and other damages.

### B. Facts as to Plaintiff Ronnie Vincent Quann

84.    Philadelphia Juvenile Probation placed Plaintiff Ronnie Quann at Summit Academy pursuant to a court order issued by a judge in the Philadelphia County Court of Common Pleas.

85.    While housed at Summit Academy, Plaintiff Quann was subjected to physical, mental,

and sexual abuse.

86.     Plaintiff Quann resided at Summit Academy from approximately 2020-2021 when he was approximately 16-17 years old.

87.     At all times material hereto, Robert Hughes was a unit manager and/or staff and/or teacher and/or employee and/or counselor and/or ostensible agent of Defendant, Summit Academy, in or around 2020-2021.

88.     Staff member Robert Hughes and another staff member, only identified as Michael, on multiple occasions would pull Plaintiff Quann into a side closet and hit Plaintiff all over his body with a broomstick or his fists.

89.     Robert Hughes and another staff member, only identified as Michael, would punch Plaintiff multiple times in various places on his body during each incident.

90.     On several occasions, Robert Hughes would grope Plaintiff's genitals through his clothes and squeeze causing serious pain and discomfort.

91.     Staff member Hughes and another staff member, only identified as Michael, would purposefully take Plaintiff Quann to areas of the facility without cameras to abuse Plaintiff Quann.

C.  **Defendants' Violation of the Constitutional Rights of Plaintiff, Abuse of Trust, and Violations of the Standard of Care Pursuant to the States and Commonwealth's Respective Laws, Rules, Regulations, and Statutes**

92.     The School is situated in a pastoral setting with historic buildings and has been marketed as a sought-after placement for juvenile detention, due to its campus, professed commitment to humane and evidence-based treatment, and successful athletic program.

93.     In reality, the School is not idyllic, nor does it provide the services and programs it has advertised. To the contrary, it has for decades failed to provide a safe and secure facility and has

abetted and tolerated practices and customs of negligent, reckless, and unconstitutional force and other abuses of those committed for treatment and education, including the Plaintiff herein.

94.    Under its veneer of civility, there is a Dickensian "culture of violence" and intimidation at the School that has severely impacted Plaintiff and other children through systematic uses of force, threats of longer sentences for those who report the abuse, and detention beyond commitment dates for those students with injuries that would be noticed upon release from the School.

95.    Based on the prior news reports, the numerous lawsuits, internal complaints by Plaintiff and others similarly situated, and the reports by the court monitors the Defendants knew or should have known about child abuse occurring at its facilities.

96.    The School's students also reported staff lying about the abuse and systematic attempts by the School and its staff to hide the abuse, going so far as intercepting letters and students getting "beat down" for reporting the abuse to law enforcement and third-party officials, with the students often too afraid to report the abuse because they feared retaliation.

97.    The pattern of assaults and child abuse was at various times abetted and promoted by threats to students who were prepared to report the abuses, including Plaintiff, that they would have to go to a worse placement, have their criminal probation deemed violated, their sentences extended, and/or having to do their time all over again.

## CAUSE OF ACTION
## FEDERAL CLAIMS PURSUANT TO THE UNITED STATES CONSTITUTION

### COUNT I
### Violation of Title IX 20 U.S.C. § 1681 *et seq.*
### Creation of Sexually Hostile Culture/Heightened Risk of Sexual Harassment
### *Plaintiff Ronnie Vincent Quann v. Summit Academy*

98.    Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

13

99. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, ... be subjected to discrimination under any education program or activity receiving Federal financial assistance."

100. Title IX is implemented through the U.S. Department of Education ("DOE") regulations, which apply to "every recipient and to the education program or activity operated by such recipient which receives Federal financial assistance," 34 C.F.R. § 106.11, and which cover sexual harassment-including sexual assault-by school employees, students, and third parties.

101. Federal DOE regulations further provide that recipients of federal financial assistance shall investigate complaints of noncompliance with those regulations, 34 C.F.R. § 106.8(a), which include sexual assault, sexual abuse, and sexual harassment.

102. The DOE regulations further require that recipients of federal financial assistance "shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part." 34 C.F.R. § 106.8(b).

103. Plaintiff is a "person" under Title IX.

104. Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

105. Defendant Summit Academy receives federal financial assistance for its education programs and is therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, et seq., and its implementing regulations at 34 C.F.R. §§ 106. l et seq.

106.    Under Title IX, Summit Academy was required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

107.    Plaintiff was subjected to sexual harassment, abuse and assault by Summit Academy staff members while he was a student, patient, and/or resident at Defendant's facilities and programs as described above, including experiencing unwelcome conduct of a sexual nature (such as unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature); sexual contact with a minor; and repeated sexual grooming behaviors.

108.    The sexual harassment, abuse, and assault experienced by Plaintiff at Summit Academy constitutes sex discrimination under Title IX. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX[2].

109.    Summit Academy was on notice of the conduct as described above, but nonetheless failed to carry out its duties to investigate and take corrective action under Title IX, including through complaints by Plaintiff directly to Summit Academy staff that they were being abused and assaulted.

110.    Summit Academy is, and has been, deliberately indifferent to the substantial risk of sexual abuse, assault, and molestation posed to all youth who enter their programs and treatment centers. After receiving numerous complaints regarding the sexual abuse of residents, being subjected to dozens of news articles highlighting such abuse, and undergoing a number of prior lawsuits regarding sexual abuse of Summit Academy youth, Defendant ignored the sexual abuse occurring under its watch and allowed it to continue.

---

[2] https://www2.ed.gov/about/offices/list/ocr/docs/sexhar00.html

111.    Summit Academy is responsible for setting and approving all national, organization-wide policies and protocols for Summit Academy programs and operations, including sex discrimination policies.

112.    Summit Academy failed to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in their programs.

113.    By failing to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs, Summit Academy allowed and encouraged this conduct to continue.

114.    The sexual harassment, abuse, and assault experienced by Plaintiff at Summit Academy was so severe, pervasive and objectively offensive that it effectively barred access to an equal opportunity to education for Plaintiff.

115.    As a direct and proximate result of Defendant Summit Academy's actions and/or inactions, Plaintiff was damaged.

116.    Summit Academy was deliberately indifferent to a sexually hostile culture with a heightened risk of sexual harassment within its programs and facilities by, among other things:

   a. Failing to address children and families' reports of sexual abuse and/or discouraging youth from reporting such abuse;
   b. Failing to promptly and adequately investigate, remedy, and respond to complaints about sexual abuse at Summit Academy;
   c. Allowing staff members with known complaints of prior sexual harassment of youth to have further access to Summit Academy residents and patients;
   d. Failing to adequately supervise staff members, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred; and
   e. Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected.

117.    Summit Academy's creation of and deliberate indifference to a sexually hostile culture increased the risk that Plaintiff would be sexually harassed. By failing to set and enforce

16

appropriate sex discrimination policies, this risk of sexual harassment was increased even further.

118.    Because Summit Academy failed to take corrective measures to curb the pattern and practice of sexual abuse towards its patients at Summit Academy, instead allowing this conduct to prevail, Plaintiff suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiff's damages were the direct and proximate result of Defendant's actions and/or inactions.

119.    In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Summit Academy acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

120.    Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff, Ronnie Vincent Quann, demands judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT II**
**Violations of Title IX 20 U.S.C. § 1681(A) et seq.**
**Deliberate Indifference to Prior Sexual Harassment**
*Plaintiff Ronnie Vincent Quann v. Summit Academy*

121.    Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

17

122. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

123. Title IX is implemented through the Code of Federal Regulations. C.F.R. § 106.8(b) provides:"… A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

124. Summit Academy's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs. Education is a primary aspect of the services Summit Academy provides to its patients and residents, placing Summit Academy squarely in the purview of Title IX.

125. Summit Academy regularly receives financial assistance and is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, et seq.

126. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

127. Sexual harassment is unwelcome conduct of a sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of a sexual nature.

128. Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment-including sexual assault-by school employees, students, and third parties.

129. Title IX requires Defendant to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

130. Before Plaintiff was abused while at Summit Academy, Summit Academy had actual knowledge of prior sexual abuse, harassment, and assault of youth in their facilities, dating back for decades.

131. Based on these prior repeated incidents of sexual abuse and assault, Defendant had actual knowledge of the substantial risk that Plaintiff would be sexually harassed, abused, or assaulted at Summit Academy.

132. With this knowledge, Summit Academy had the authority to address the pervasive risk of sexual abuse in its programs, and had the authority to take corrective measures, including by:

   a. Addressing children and families' prior reports of sexual abuse and encouraging youth to openly report sexual advances by staff members;
   b. Thoroughly investigating and terminating the employment of staff members with known complaints of prior sexual abuse and harassment of youth;
   c. Increasing the quality of staff supervision, particularly during vulnerable nighttime hours, and allowing staff members to take youth on unsupervised outings where sexual abuse occurred;
   d. Maintaining appropriate numbers of staff to ensure that there were no blind spots where abuse could go undetected; and
   e. Improving Summit Academy's physical facilities to increase visibility such that no concealed areas remained where abuse could occur undetected.
   f. Failing to exercise reasonable care with respect to Plaintiff's placement at Summit Academy;
   g. Failure to have adequate screening and policies to ensure proper placement of adjudicated youth, like Plaintiff;
   h. Permitting and/or otherwise causing Plaintiff to be exposed to Summit Academy managers, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School with known history of sexually assault complaints;
   i. Permitting and/or otherwise causing Plaintiff to be exposed to sexual assault;
   j. Failing to train and supervise their employees and agents which allowed for the improper placement of Plaintiff at Summit Academy;
   k. Failure to enforce codes, regulations and policies with respect to removal of foster children from a foster home;
   l. Failure to have adequate policies to ensure that adjudicated youth are timely removed from a harmful environment;

m.      Failure to enforce adequate screening and policies to ensure safe and suitable placement of adjudicated youth, like the Plaintiff; and,

n.      Such other deliberately indifferent, reckless, and willful and wanton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

133.    Summit Academy's failure to address the substantial risk of sexual abuse in its programs and facilities, given prior complaints and reports about past abuse, and its failure to set appropriate sex discrimination policy, was clearly unreasonable in light of the known circumstances.

134.    By its acts and omissions, Summit Academy was deliberately indifferent to the substantial risk that Plaintiff would be sexually harassed, abused, and/or assaulted while at Summit Academy.

135.    As a result of Defendant's deliberate indifference to this pervasive culture of sexual harassment, Plaintiff was subjected to severe sexual abuse as a child, student, patient, and/or resident in Summit Academy's programs.

136.    Because Summit Academy did not take corrective measures to curb the pattern and practice of sexual abuse towards children at Summit Academy, instead allowing this conduct to prevail, Plaintiff suffered emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, and physical manifestations of this emotional distress. Plaintiff's damages were the direct and proximate result of Defendant's actions and/or inactions.

137.    The sexual harassment suffered by Plaintiff was so severe, pervasive, and objectively offensive that it effectively barred their access to education opportunities and benefits, including a safe educational environment, full access to their treatment program, and appropriate medical care while at Summit Academy.

138.    In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Summit Academy, in its efforts to avoid bad publicity and maintain its public image, acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of

20

Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendant, in a sum to be shown according to proof.

139. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

WHEREFORE, Plaintiff, Ronnie Vincent Quann, demands judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT III**
**Violations of Title 42 (42 U.S.C. § 1983 et seq.)**
**Civil Rights Deprivation**
*Plaintiff Ronnie Vincent Quann v. Summit Academy*

140. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

141. While obtaining an education and otherwise residing at the Defendant Summit Academy's facility, Plaintiff had a right to have his civil rights protected and safeguarded.

142. The Eighth and Fourteenth Amendments to the United States Constitution protects Plaintiff from physical and sexual abuse and unreasonable uses of force from Defendants. These Amendments also require Defendant Summit Academy to establish policies and practices to protect Plaintiff from known harms and known patterns of constitutional deprivations.

143. The School acts as an arm of the states and Commonwealth, where it operates, providing a core public function, and is a state governmental actor for 42 U.S.C. § 1983 liability purposes.

144. The School failed, with deliberate indifference, to provide a safe custodial setting for Plaintiff, by failing to properly train, supervise, and discipline the staff at the School, including all John/Jane Does. As a proximate result of the School's policies, practices, and customs, the Defendants, and the John Doe Defendants, subjected and/or allowed to be subjected, Plaintiff to physical and/or sexual abuse.

**WHEREFORE**, Plaintiff Ronnie Vincent Quann, demands judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT IV**
**Deprivation of Rights Pursuant to The Civil Rights Act Of 1871, 42 U.S.C. § 1983**
**By Virtue of State Created Danger**
***Plaintiff Ronnie Vincent Quann v. Summit Academy***

145. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

146. This is a civil rights action brought pursuant to 42 U.S.C. § 1983 that challenges the constitutionality of the actions of Defendant that resulted in the injuries suffered by Plaintiff.

147. At all times relevant hereto, Defendant Summit Academy was a "persons" pursuant to 42 U.S.C. § 1983 by providing residential placement and oversight services either directly, by delegated authority, or via contractual authority.

148. Defendant's constitutional torts are not governed or limited in any way by 42 Pa.C.S. § 8541, *et seq.* or 42 Pa.C.S. § 8521, *et seq.*

149. The specific harms to which Defendants exposed Plaintiff were foreseeable and direct, in that they were aware of prior sexual abuse, harassment, and assault of youth at Summit Academy, dating back for decades.

22

150. At all times material hereto, Defendant Summit Academy was bound by various Pennsylvania statutes as well as, upon information and belief, its own policies, rules and regulations for the management and oversight of adjudicated youth and their placement into a residential facility.

151. Defendant, in direct contravention and violation of those Pennsylvania statutes as set forth above (55 Pa. Code §§ 3130 *et seq.* and 3700 *et seq.*) and, upon information and belief, in violation of Defendant Summit Academy's own rules, regulations and policies, and recklessly, willfully and with deliberate indifference, placed Plaintiff at Summit Academy.

152. At all times relevant hereto, Defendant Summit Academy was acting "under color of state law" for purposes of 42 U.S.C. § 1983 by providing residential placement, oversight and/or rehabilitative services to Plaintiff as set forth above.

153. Defendant Summit Academy, while acting under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference to Plaintiff's rights, violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law in that Defendant, without lawful basis, caused the aforementioned injuries and damages to Plaintiff, by creating the danger to which Plaintiff was exposed, in violation of his aforesaid guaranteed rights as follows upon information and belief:

a. Failing to adhere to accepted standards for good and reasonable placement;
b. Failure to have adequate screening and policies to ensure proper placement of adjudicated youth in residential placements, including the Plaintiff;
c. Permitting and/or otherwise causing Plaintiff to be exposed to managers, employees, administrators, supervisors, teaching staff, medical staff, and others who have been employed by or were under the control of the School, who abused and/or facilitated the abuse of children at the School,
d. Permitting and/or otherwise causing Plaintiff to be exposed to sexual assault;

23

e.      Failing to train and supervise their employees and agents which allowed for the negligent placement of Plaintiff;

f.      Failure to enforce adequate screening and policies to ensure safe and suitable placement of adjudicated youth in residential placements, including Plaintiff;

g.      Such other deliberately indifferent, reckless, and willful and wanton conduct resulting in the violation of Plaintiff's rights that shall be revealed through discovery prior to trial.

154.    The danger created by Defendant as aforesaid was foreseeable and fairly direct.

155.    In creating the danger as set forth above, Defendant acted in willful disregard for the safety of Plaintiff.

156.    A relationship existed between Plaintiff and the Defendant as set forth above, such that Plaintiff was a foreseeable victim of the Defendant's actions and/or inactions as described above.

157.    In creating the danger as set forth above, Defendant Summit Academy, by virtue of their authority, placed Plaintiff in a dangerous position that was foreseeable.

158.    Defendant Summit Academy, initiated under color of state law, unlawfully, and/or intentionally, unreasonably, willfully, maliciously, and/or with deliberate and/or reckless indifference violated 42 U.S.C. § 1983 and deprived Plaintiff of his rights as guaranteed under the Fourteenth Amendment to the United States Constitution, similar provisions of the Pennsylvania Constitution, Federal Law, State Law, and/or local law without lawful basis, thus causing injuries and damages to Plaintiff, as aforesaid.

159.    By reason of the aforesaid actions and inactions of the Defendant Summit Academy, and as a direct and proximate result thereof, Plaintiff suffered forcible sexual assault, and now suffers from permanent psychological injuries and special damages. Plaintiff also sustained injuries and damages as a result of the described incident.

        **WHEREFORE**, Plaintiff Ronnie Vincent Quann demands judgment against Defendant Summit Academy, individually, jointly and/or severally, in an amount in excess of Seventy-Five

Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT V**
**Violations of Title IX 20 U.S.C. § 1681(A) et seq.**
**Deliberate Indifference to Prior Sexual Harassment**
*Plaintiff Ronnie Vincent Quann v. Juvenile Probation*

160.    Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

161.    At all relevant times, Defendant Juvenile Probation was a recipient of federal financial assistance and operated programs and activities that were, at least in part, educational in nature within the meaning of Title IX of the Education Amendments of 1972.

162.    Defendant Juvenile Probation exercised authority over Plaintiff's placement, supervision, and continued confinement at The Summit School. This authority included responsibility to monitor Plaintiff's placement, receive and act upon information concerning his welfare, and remove or transfer Plaintiff if necessary to ensure his safety.

163.    Under Pennsylvania law, the placement of juveniles in out-of-home facilities is part of an ongoing supervisory and review framework rather than a one-time decision. See Pennsylvania Rule of Appellate Procedure 1612. Consistent with this framework, Defendant Juvenile Probation retained continuing authority and responsibility to oversee Plaintiff's placement and to take action where necessary to protect him from harm.

164.    While Plaintiff was placed at The Summit School, he was subjected to severe and pervasive sexual abuse by a staff member who exercised authority and control over him within that custodial setting.

165.    Prior to and during Plaintiff's placement, Defendant Juvenile Probation had actual knowledge of a substantial risk of sexual abuse at The Summit School. This knowledge arose from, inter alia, prior reports, complaints, investigations, and other information available to the department concerning sexual misconduct and unsafe conditions at the facility, as well as the known risks associated with placing vulnerable youth in custodial residential environments where staff exercise significant control over residents.

166.    Despite this actual knowledge, Defendant Juvenile Probation failed to take reasonable steps to protect Plaintiff. Specifically, Defendant failed to adequately monitor Plaintiff's placement, failed to implement or enforce safeguards to ensure his safety, and failed to remove or transfer Plaintiff despite retaining the authority to do so.

167.    Defendant Juvenile Probation's response to the known risk of sexual abuse was clearly unreasonable in light of the circumstances and amounted to deliberate indifference.

168.    As a direct result of Defendant Juvenile Probation's deliberate indifference, Plaintiff was subjected to sexual harassment and abuse that was severe, pervasive, and objectively offensive.

169.    This conduct deprived Plaintiff of access to educational opportunities and benefits, including a safe educational environment and meaningful participation in his placement and treatment program.

170.    As a direct and proximate result of Defendant Juvenile Probation's actions and omissions, Plaintiff suffered physical injury, emotional distress, humiliation, loss of dignity, and other damages.

171.    Defendant Juvenile Probation's conduct was willful, wanton, and in conscious disregard of Plaintiff's rights, entitling Plaintiff to all appropriate relief available under law.

172.    Plaintiff also seeks reasonable attorneys' fees and costs as permitted.

**WHEREFORE**, Plaintiff, Ronnie Vincent Quann, demands judgment against Defendant Juvenile Probation, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**PENNSYLVANIA STATE LAW CLAIMS**
**COUNT VI**
**<u>Negligence</u>**
*Plaintiff Ronnie Vincent Quann v. Summit Academy*

173. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

174. Defendant Summit Academy had a duty to act reasonably and to maintain a safe environment for Plaintiff while within Defendant Summit Academy's care.

175. Summit Academy acted with a lack of care towards Plaintiff through its acts and omissions, including: allowing and authorizing a culture of abuse at Summit Academy facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Summit Academy programs; failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Summit Academy facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiff's wellbeing while in Summit Academy programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about repeated known incidents of physical, sexual and emotional abuse within Summit Academy programs; and failing to prevent serious and lasting

psychological, physical, and emotional harm to youth in Summit Academy programs.

176.    Moreover, Summit Academy's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

177.    By failing to exercise ordinary care through their acts and omissions, Summit Academy caused harm to Plaintiff.

178.    Because of Defendant's breach of their duty of care, Defendant foreseeably caused physical and emotional harm to Plaintiff.

WHEREFORE, Plaintiff Ronnie Vincent Quann, demands judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT VII
### Negligence (Negligent Hiring, Retention, and Supervision)
### *Plaintiff Ronnie Vincent Quann v. Summit Academy*

208.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

209.    At all relevant times, Defendant, Summit Academy, owed Plaintiff a duty to exercise reasonable care in the hiring, retention, and supervision of its employees and agents who were entrusted with the care, custody, and control of minor residents.

210.    Defendant further owed Plaintiff a duty to implement and enforce appropriate policies, procedures, and safeguards to protect vulnerable youth from foreseeable risks of physical, sexual, and emotional abuse by staff.

211.    Defendant breached these duties in one or more of the following ways:

a)      Failing to conduct adequate pre-employment screening of staff, including failing to identify prior complaints, disciplinary history, or other indicators of unfitness for working with minor residents;

28

b)    Hiring individuals who were not suitable to work in a residential behavioral health setting involving children with cognitive and mental health vulnerabilities;

c)    Failing to properly train staff regarding appropriate boundaries, reporting obligations, and the prevention of abuse and exploitation;

d)    Failing to implement or enforce adequate supervision protocols, including maintaining appropriate staff-to-resident ratios, ensuring visibility and monitoring of staff interactions with residents, and preventing staff from isolating residents;

e)    Failing to maintain and review incident reports, complaints, or other indicators of staff misconduct;

f)    Failing to investigate reports or signs of abuse, including complaints made by Plaintiff and/or observable physical or behavioral indicators of harm;

g)    Failing to discipline, reassign, or terminate staff members who engaged in inappropriate, abusive, or suspicious conduct;

h)    Permitting staff to continue interacting with residents despite known or reasonably knowable risks of harm.

212.    Prior to and during Plaintiff's residency, Defendant knew or, in the exercise of reasonable care, should have known that its staff posed a risk of harm to residents, including Plaintiff, based on complaints, reports, observable injuries, and/or patterns of inappropriate conduct.

213.    Despite this knowledge, Defendant failed to take reasonable steps to protect Plaintiff, thereby allowing the abusive conduct to occur.

214.    As a direct and proximate result of Defendant's negligence, Plaintiff was subjected to physical abuse, emotional harm, and/or other injuries while in Defendant's care.

215.    These harms were reasonably foreseeable given the nature of the residential setting, the vulnerability of the population served, and Defendant's failure to implement and enforce appropriate safeguards.

216.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer physical pain, emotional distress, mental anguish, humiliation, and loss of life's pleasures.

29

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount in excess of $75,000, together with all appropriate damages, interest, costs, and such other relief as the Court deems just.

## COUNT VIII
### Vicarious Liability (Respondeat Superior)
### *Plaintiff Ronnie Vincent Quann v. Summit Academy*

217. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

218. At all relevant times, the individuals who physically, emotionally, and/or otherwise abused Plaintiff were employees, agents, and/or apparent agents of Defendant, Summit Academy.

219. These individuals were acting within the course and scope of their employment, including while supervising, restraining, monitoring, and providing care and treatment to Plaintiff.

220. The wrongful acts committed against Plaintiff occurred during the performance of job duties assigned by Defendant and were made possible by the authority, access, and control entrusted to these employees by Defendant.

221. Defendant placed these employees in positions of power over Plaintiff, including authority to supervise, discipline, and physically control Plaintiff within the residential setting.

222. To the extent any acts of abuse exceeded the scope of authorized conduct, those acts were nonetheless foreseeable and facilitated by the employment relationship, including Defendant's delegation of authority and failure to implement and enforce adequate safeguards.

223. Defendant is therefore vicariously liable for the tortious conduct of its employees under the doctrine of respondeat superior.

224. As a direct and proximate result of the acts of Defendant's employees, Plaintiff suffered physical injury, emotional distress, and other damages.

WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of $75,000, together with all appropriate damages, interest, costs, and such other relief as the Court deems just.

### COUNT IX
### Negligent Infliction of Emotional Distress
### *Plaintiff Ronnie Vincent Quann v. Summit Academy*

225.   Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

226.   Defendant, Summit Academy, owed Plaintiff a duty of care arising from its custodial relationship and its responsibility for Plaintiff's safety and well-being.

227.   Defendant breached this duty through the negligent acts and omissions described above.

228.   As a direct result of Defendant's negligence, Plaintiff was placed in a zone of danger of physical impact and, in fact, suffered physical injury while in Defendant's care.

229.   Defendant's conduct subjected Plaintiff to circumstances involving physical abuse and a reasonable fear of imminent bodily harm.

230.   As a result, Plaintiff suffered serious emotional distress, including psychological trauma, anxiety, fear, humiliation, and other manifestations of emotional harm.

231.   Plaintiff's emotional distress is accompanied by physical injury and/or physical manifestations, including but not limited to sleep disruption, anxiety symptoms, physical pain, and depression.

232.   Defendant's failure to implement and enforce adequate policies for preventing and responding to abuse further exacerbated Plaintiff's emotional harm.

233.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages.

31

**WHEREFORE**, Plaintiff demands judgment against Defendant in an amount in excess of $75,000, together with all appropriate damages, interest, costs, and such other relief as the Court deems just.

## JURY TRIAL DEMAND

288. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

289. Plaintiff demands a jury on all claims triable as a matter of right.


Respectfully submitted,


**VAN DER VEEN, HARTSHORN & LEVIN**                    **CORNERSTONE LEGAL GROUP, LLC**

/s/                                                    _/s/ David Wesley Cornish_
Michael T. van der Veen, Esquire                       David Wesley Cornish, Esquire
PA ID No. 75616                                        PA ID No. 310865
mtv@mtvlaw.com                                         cornerstonelegalgroup@gmail.com
Steven R. Bryson, Esquire                              230 South Broad Street, 17th Floor
PA ID No. 324942                                       Philadelphia, PA 19102
sbryson@mtvlaw.com                                     P: (212) 444-2039
1219 Spruce Street                                     _Attorney for Plaintiff_
Philadelphia, PA 19107
P: (215) 546-1000
_Attorneys for Plaintiff_


Date: 7/7/26

32